1    Roxanne M. Wilson (SBN 94627)
     REED SMITH LLP
2    355 South Grand Avenue
     Suite 2900
3    Los Angeles, CA 90071-1514
     Telephone: +1 213 457 8000
4    Facsimile: +1 213 457 8080

5    Renee C. Feldman (SBN 253877)
     REED SMITH LLP
6    101 Second Street
     Suite 1800
7    San Francisco, CA 94105-3659
     Telephone: +1 415 543 8700
8    Facsimile: +1 415 391 8269
     Attorneys for Defendants
9
     Bank of America Corporation; Bank of
10   America, N.A.; Merrill Lynch & Co., Inc.

ORIGINAL
FILED

AUG 09 2013

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

DMR

11

12           UNITED STATES DISTRICT COURT

         NORTHERN DISTRICT OF CALIFORNIA
13

14   SALMA AGHMANE,        **CV** No. **13  3698**

15           Plaintiff,       **NOTICE OF REMOVAL OF CIVIL**
                             **ACTION UNDER 28 U.S.C. §§ 1332 AND**
16       vs.               **1441(B) (DIVERSITY)**

17   BANK OF AMERICA CORPORATION; BANK
     OF AMERICA, N.A.; MERRILL LYNCH &
18   CO., INC., and DOES One through 200,

19           Defendants.

20

21

22

23

24

25

26

27

28

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

                        – 1 –

US_ACTIVE-113824398

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

1  TO THE CLERK OF THE ABOVE-ENTITLED COURT AND TO PLAINTIFF AND HER

2  ATTORNEYS OF RECORD:

3       PLEASE TAKE NOTICE that Defendants Bank of America Corporation; Bank of America,

4  N.A.; and Merrill Lynch & Co., Inc. ("Defendants") hereby remove to this Court the state court

5  action described below.

6       In compliance with 28 U.S.C. § 1446(a), Defendants assert the following grounds for

7  removal:

8  <u>JURISDICTION AND VENUE ARE PROPER</u>

9      1.    This case is a civil action over which this Court has jurisdiction pursuant to 28 U.S.C.

10  § 1332, and is one that may be removed to this Court pursuant to 28 U.S.C. § 1441(b), because it is a

11  civil action between citizens of different states and the amount in controversy exceeds $75,000.

12      2.    The Superior Court for the County of San Francisco, in which the action was

13  originally filed, is located within the Northern District of California where this Notice of Removal is

14  being filed. Further, the allegations of the Complaint involve Plaintiff's employment in San

15  Francisco, California. Compl ¶ 7. Therefore, this Notice of Removal is properly filed in the

16  Northern District of California.

17  <u>STATUS OF PLEADINGS AND PROCESSES</u>

18      3.    On or about June 27, 2013, Plaintiff Salma Aghmane ("Plaintiff") filed a Complaint

19  in the Superior Court of the State of California, County of San Francisco, entitled *Salma Aghmane v.*

20  *Bank of America Corporation; Bank of America, N.A.; Merrill Lynch & Co., Inc., and Does One*

21  *through 200,* Case No. CGC-13-532473 (hereinafter the "State Court Action").

22      4.    In her Complaint, Plaintiff alleges the following claims in connection with her

23  employment: (1) violations of Fair Employment and Housing Act, (2) violations of Equal Pay Act,

24  (3) blacklisting, (4) defamation, (5) intentional infliction of emotional distress, (6) negligent

25  infliction of emotional distress, (7) intentional interference with economic advantage, and (8)

26  negligent interference with economic advantage.

27

28

5.      On July 11, 2013, Plaintiff served a copy of the Summons, Complaint, and related documents on each of the Defendants.  True and correct copies of the Summons, Complaint, and related documents served on each of the Defendants are attached hereto as Exhibits A, B, C.

6.      On August 7, 2013, Defendants filed and served their Answer to the Complaint in the State Court Action.  A true and correct copy of Defendants' Answer is attached hereto as Exhibit D.

7.      All process, pleadings, and orders received or filed by Defendants in the State Court Action are attached hereto as follows:

- Exhibit A      Summons and Complaint, Bank of America Corp.
- Exhibit B      Summons and Complaint, Bank of America, N.A.
- Exhibit C      Summons and Complaint, Merrill Lynch & Co., Inc.
- Exhibit D      Defendants' Answer

No additional papers or processes have been filed or received by Defendants in the State Court Action.  To Defendants' knowledge, no further proceedings have occurred.

<u>NOTICE TO STATE COURT AND PLAINTIFF</u>

8.      Promptly upon the filing of this Notice of Removal in the United States District Court for the Northern District of California, written notice of the removal will be provided to counsel for Plaintiff, and a copy of this Notice of Removal will be filed with the San Francisco County Superior Court Clerk as required by 28 U.S.C. § 1446(d).

<u>DEFENDANTS' REMOVAL IS TIMELY</u>

9.      This Notice is timely in that it is being filed within thirty (30) days of Defendants' receipt of Plaintiff's initial pleading.  *See* 28 U.S.C. 1446(b).  No other defendants have appeared in this action, as only additional Doe defendants have been named.

<u>COMPLETE DIVERSITY OF CITIZENSHIP EXISTS</u>

10.      The parties are completely diverse in this matter, as Plaintiff is a citizen of California and none of Defendants are citizens of California.

11.      Diversity of citizenship exists as long as no plaintiff is a citizen of the same state as any defendant at the time the action was filed and at the time of removal.  For purposes of removal, the citizenship of Doe defendants is disregarded, and only named defendants are considered.  28

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

U.S.C. § 1441(a); *see also Newcombe v. Adolf Coors Co.*, 157 F.3d 686, 690 (9th Cir. 1998); (citing 28 U.S.C. § 1441(a)); *Fristoe v. Reynolds Metals Co.*, 615 F.2d 1209, 1213 (9th Cir. 1980).

Plaintiff's Citizenship

12. At the time this action was commenced and at the time of removal, Plaintiff was a citizen of the State of California. *See* Complaint ¶ 5 (Plaintiff asserts that she is a resident of the California); *see also Lew v. Moss*, 797 F.2d 747, 751 (9th Cir. 1986) (allegations of residency in a state court complaint create a rebuttable presumption of domicile supporting diversity of citizenship).

13. Bank of America, N.A.'s employment records for Plaintiff reflect that her home address was located in California from October 2009 through the termination of her employment, and as of the last date of her employment, she had a home address in Fremont, California. Declaration of Robert Drozynski ("Drozynski Decl."), ¶ 4. According to BANA's payroll records for Plaintiff, which includes Plaintiff's W-2 Wage and Tax Statements and pay check stubs, income tax and funds for California State Disability Insurance were withheld for the State of California from October 2009 through the termination of her employment. Drozynski Decl. at ¶ 5.

Defendants' Citizenship

14. Defendant Bank of America Corporation is a multi-dimensional financial services company. It is incorporated under the laws of the State of Delaware, and its principal place of business is in Charlotte, North Carolina, which is where its officers direct, control and coordinate its activities. Declaration of Allison L. Gilliam ("Gilliam Decl."), ¶ 2.

15. Defendant Bank of America, National Association is a national association organized under the laws of the United States of America. In its articles of association, it has designated North Carolina as the state in which its main office is located. Gilliam Decl. at ¶¶ 3-4. For diversity purposes, federally chartered national banks shall be deemed citizens of the state in which its main office is located, as designated in its articles of association. *Wachovia Bank, National Association v. Daniel G. Schmidt, III et al.,* 546 U.S. 303, 318 (2006).

16. Defendant Merrill Lynch and Co., Inc. is incorporated under the laws of the State of Delaware, and its principal place of business is in Charlotte, North Carolina. Declaration of Taquana M. Johnson, ¶ 3.

NOTICE OF REMOVAL

17.     Based on the foregoing, diversity is established between Plaintiff and Defendants because Plaintiff is a citizen of California, while none of the Defendants are citizens of California for purposes of removal.

<u>THE AMOUNT IN CONTROVERSY EXCEEDS $75,000</u>

18.     Plaintiff asserts in her Complaint that "Plaintiff was due to be paid a significant six-figure bonus [$100,000 or more], already earned for her performance in 2012, on February 15, 2013. Because Plaintiff was terminated on January 11, 2013, BANK OF AMERICA did not pay plaintiff the bonus due to her." Compl. ¶¶ 32-33.

19.     Plaintiff also seeks additional general and special damages to be proven, punitive damages, and attorney's fees. Compl. Prayer. Punitive damages and attorney's fees are included in calculating the amount in controversy. *Davenport v. Mutual Ben. Health & Acc. Ass'n*, 325 F.2d 785, 787 (9th Cir. 1963) (punitive damages); *Galt G/S v. JSS Scandinavia*, 142 F.3d 1150, 1155-56 (9th Cir. 1998) (attorney's fees).

20.     Therefore, although Defendants deny Plaintiff's allegations, for purposes of removal, the amount in controversy exceeds the jurisdictional minimum of $75,000.

WHEREFORE, having provided notice as required by law and based on the above, the above-entitled action should hereby be removed from the Superior Court of the County of San Francisco to this honorable District Court.

DATED:  August 9, 2013

REED SMITH LLP

By: _____
Roxanne M. Wilson
Renee C. Feldman
Attorneys for Defendants
Bank of America Corporation; Bank of America, N.A.; Merrill Lynch & Co., Inc.

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

# EXHIBIT A

 CT Corporation

TO: CA LegaLit
Bank of America
Litigation Intake, CA6-915-01-17
30870 RUSSELL RANCH RD
Westlake Village, CA 91362

RE: **Process Served in California**

FOR: Bank of America Corporation (Domestic State: DE)

**ENCLOSED ARE COPIES OF LEGAL PROCESS RECEIVED BY THE STATUTORY AGENT OF THE ABOVE COMPANY AS FOLLOWS:**

| | |
|---|---|
| **TITLE OF ACTION:** | Salma Aghmane, etc., Pltf. vs. Bank of America Corporation, et al., Dfts. |
| **DOCUMENT(S) SERVED:** | Summons, Notice, Cover Sheet, Complaint, Demand for Jury Trial, ADR Packets |
| **COURT/AGENCY:** | San Francisco County - Superior Court - San Francisco, CA<br>Case # CGC13532473 |
| **NATURE OF ACTION:** | Employee Litigation - Discrimination - Wrongful termination on the basis of gender, race and national origin |
| **ON WHOM PROCESS WAS SERVED:** | C T Corporation System, Los Angeles, CA |
| **DATE AND HOUR OF SERVICE:** | By Process Server on 07/11/2013 at 17:57 |
| **JURISDICTION SERVED :** | California |
| **APPEARANCE OR ANSWER DUE:** | Within 30 days after service - File written response // November 27, 2013 at 10:30 a.m. - Case Management Conference // No later than 15 days before the date set for Case Management Review/Conference - File and Serve Case Management Statement |
| **ATTORNEY(S) / SENDER(S):** | Randall B. Aiman-Smith<br>Aiman-Smith & Marcy PC<br>7677 Oakport Street, Suite 1020<br>Oakland, CA 94621<br>510-562-6800 |
| **ACTION ITEMS:** | CT has retained the current log, Retain Date: 07/11/2013, Expected Purge Date: 07/16/2013<br>Image SOP<br>Email Notification, CA LegaLit calegalit@bankofamerica.com |
| **SIGNED:** | C T Corporation System |
| **PER:** | Nancy Flores |
| **ADDRESS:** | 818 West Seventh Street<br>Los Angeles, CA 90017 |
| **TELEPHONE:** | 213-337-4615 |

Information displayed on this transmittal is for CT Corporation's record keeping purposes only and is provided to the recipient for quick reference. This information does not constitute a legal opinion as to the nature of action, the amount of damages, the answer date, or any information contained in the documents themselves. Recipient is responsible for interpreting said documents and for taking appropriate action. Signatures on certified mail receipts confirm receipt of package only, not contents.

SUM-100

FOR COURT USE ONLY
(SOLO PARA USO DE LA CORTE)

# SUMMONS
## (CITACION JUDICIAL)

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*
BANK OF AMERICA CORPORATION; BANK OF AMERICA N.A.;
MERRILL LYNCH & CO., INC., and DOES One through 200

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*
SALMA AGHMANE, an individual

NOTICE! You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (www.lawhelpcalifornia.org), the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), or by contacting your local court or county bar association. NOTE: The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.

¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.

Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.

Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.

The name and address of the court is:
*(El nombre y dirección de la corte es):* San Francisco County Superior Court

CASE NUMBER:
*(Número del Caso):* **C G C - 1 3 - 5 3 2 4 7 3**

400 McAllister Street
San Francisco, CA 94102

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
Randall Aiman-Smith, Aiman-Smith & Marcy, 7677 Oakport St. #1020, Oakland, CA 94621, (510) 562-6800

DATE: June 27, 2013    Clerk, by _____ , Deputy
*(Fecha)* CLERK OF THE COURT    *(Secretario)* KEITH D. TOM    *(Adjunto)*

(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)
*(Para prueba de entrega de esta citación use el formulario Proof of Service of Summons, (POS-010).)*

NOTICE TO THE PERSON SERVED: You are served

1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify):*
3. ☒ on behalf of *(specify):* Bank of America Corporation

   under: ☒ CCP 416.10 (corporation) ☐ CCP 416.60 (minor)
   ☐ CCP 416.20 (defunct corporation) ☐ CCP 416.70 (conservatee)
   ☐ CCP 416.40 (association or partnership) ☐ CCP 416.90 (authorized person)
   ☐ other *(specify):*
4. ☐ by personal delivery on *(date):*

**BY FAX**

Page 1 of 1

Form Adopted for Mandatory Use
Judicial Council of California
SUM-100 [Rev. July 1, 2009]
SUMMONS
Code of Civil Procedure §§ 412.20, 465
www.courtinfo.ca.gov

CASE NUMBER: CGC-13-532473  SALMA AGHMANE VS. BANK OF AMERICA CORPORATIOI

## NOTICE TO PLAINTIFF

A Case Management Conference is set for:

> **DATE:** NOV-27-2013
>
> **TIME:** 10:30AM
>
> **PLACE:** Department 610
> 400 McAllister Street
> San Francisco, CA  94102-3680

All parties must appear and comply with Local Rule 3.

CRC 3.725 requires the filing and service of a case management statement form CM-110 no later than 15 days before the case management conference.

However, it would facilitate the issuance of a case management order

without an appearance

statement is filed, served and lodged in Department 610

twenty-five (25) days before the case management

Plaintiff must serve a copy of this notice upon each party to this action with the summons and complaint. Proof of service subsequently filed with this court shall so state.

### ALTERNATIVE DISPUTE RESOLUTION POLICY REQUIREMENTS

IT IS THE POLICY OF THE SUPERIOR COURT THAT EVERY CIVIL
CASE PARTICIPATE IN EITHER MEDIATION, JUDICIAL OR NON-
JUDICIAL ARBITRATION, THE EARLY SETTLEMENT PROGRAM OR
SOME SUITABLE FORM OF ALTERNATIVE DISPUTE RESOLUTION
PRIOR TO A TRIAL.
(SEE LOCAL RULE 4)

Plaintiff must serve a copy of the Alternative Dispute Resolution Information Package on each defendant along with the complaint. All counsel must discuss ADR with clients and opposing counsel and provide clients with a copy of the Alternative Dispute Resolution Information Package prior to filing the Case Management Statement.

[DEFENDANTS: Attending the Case Management Conference does not take the place of filing a written response to the complaint. You must file a written response with the court within the time limit required by law. See Summons.]

Superior Court Alternative Dispute Resolution Coordinator
400  McAllister Street, Room 103
San Francisco, CA  94102
(415) 551-3876

See Local Rules 3.3, 6.0 C and 10 B re stipulation to judge pro tem.

| | FOR COURT USE ONLY |
|---|---|
| ATTORNEY OR PARTY WITHOUT ATTORNEY (Name, State Bar number, and address):<br>Randall B. Aiman-Smith (#124599), Hallie Von Rock (#233152)<br>Aiman-Smith & Marcy PC<br>7677 Oakport Street, Suite 1020<br>Oakland, CA 94621<br>TELEPHONE NO.: (510) 562-6800    FAX NO.: (510) 562-6830<br>ATTORNEY FOR (Name): Plaintiff Salma Aghmane | |

SUPERIOR COURT OF CALIFORNIA, COUNTY OF San Francisco
STREET ADDRESS: 400 McAllister Street
MAILING ADDRESS:
CITY AND ZIP CODE: San Francisco, CA 94102
BRANCH NAME:

CASE NAME:
Salma Aghmane v. Bank of America Corporation, et al.

| CIVIL CASE COVER SHEET | Complex Case Designation | CASE NUMBER: |
|---|---|---|
| [✓] Unlimited    [ ] Limited<br>(Amount       (Amount<br>demanded    demanded is<br>exceeds $25,000)   $25,000 or less) | [ ] Counter    [ ] Joinder<br>Filed with first appearance by defendant<br>(Cal. Rules of Court, rule 3.402) | JUDGE:<br><br>DEPT: |

*Items 1–6 below must be completed (see instructions on page 2).*

1. Check one box below for the case type that best describes this case:

**Auto Tort**
- [ ] Auto (22)
- [ ] Uninsured motorist (46)

**Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort**
- [ ] Asbestos (04)
- [ ] Product liability (24)
- [ ] Medical malpractice (45)
- [ ] Other PI/PD/WD (23)

**Non-PI/PD/WD (Other) Tort**
- [ ] Business tort/unfair business practice (07)
- [ ] Civil rights (08)
- [ ] Defamation (13)
- [ ] Fraud (16)
- [ ] Intellectual property (19)
- [ ] Professional negligence (25)
- [ ] Other non-PI/PD/WD tort (35)

**Employment**
- [✓] Wrongful termination (36)
- [ ] Other employment (15)

**Contract**
- [ ] Breach of contract/warranty (06)
- [ ] Rule 3.740 collections (09)
- [ ] Other collections (09)
- [ ] Insurance coverage (18)
- [ ] Other contract (37)

**Real Property**
- [ ] Eminent domain/Inverse condemnation (14)
- [ ] Wrongful eviction (33)
- [ ] Other real property (26)

**Unlawful Detainer**
- [ ] Commercial (31)
- [ ] Residential (32)
- [ ] Drugs (38)

**Judicial Review**
- [ ] Asset forfeiture (05)
- [ ] Petition re: arbitration award (11)
- [ ] Writ of mandate (02)
- [ ] Other judicial review (39)

**Provisionally Complex Civil Litigation (Cal. Rules of Court, rules 3.400–3.403)**
- [ ] Antitrust/Trade regulation (03)
- [ ] Construction defect (10)
- [ ] Mass tort (40)
- [ ] Securities litigation (28)
- [ ] Environmental/Toxic tort (30)
- [ ] Insurance coverage claims arising from the above listed provisionally complex case types (41)

**Enforcement of Judgment**
- [ ] Enforcement of judgment (20)

**Miscellaneous Civil Complaint**
- [ ] RICO (27)
- [ ] Other complaint (not specified above) (42)

**Miscellaneous Civil Petition**
- [ ] Partnership and corporate governance (21)
- [ ] Other petition (not specified above) (43)

2. This case [ ] is [✓] is not complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
   a. [ ] Large number of separately represented parties
   b. [ ] Extensive motion practice raising difficult or novel issues that will be time-consuming to resolve
   c. [ ] Substantial amount of documentary evidence
   d. [ ] Large number of witnesses
   e. [ ] Coordination with related actions pending in one or more courts in other counties, states, or countries, or in a federal court
   f. [ ] Substantial postjudgment judicial supervision

3. Remedies sought (check all that apply): a. [✓] monetary  b. [ ] nonmonetary; declaratory or injunctive relief  c. [✓] punitive

4. Number of causes of action (specify): 8

5. This case [ ] is [✓] is not a class action suit.

6. If there are any known related cases, file and serve a notice of related cases. (You may use form CM-015.)

Date: June 27, 2013

Hallie Von Rock
(TYPE OR PRINT NAME)        ► (SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

**NOTICE**
- Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
- File this cover sheet in addition to any cover sheet required by local court rule.
- If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on all other parties to the action or proceeding.
- Unless this is a collections case under rule 3.740 or a complex case, this cover sheet will be used for statistical purposes only.

Form Adopted for Mandatory Use
Judicial Council of California
CM-010 [Rev. July 1, 2007]

**CIVIL CASE COVER SHEET**

Cal. Rules of Court, rules 2.30, 3.220, 3.400–3.403, 3.740;
Cal. Standards of Judicial Administration, std. 3.10
www.courtinfo.ca.gov

1  RANDALL B. AIMAN-SMITH #124599
   REED W.L. MARCY #191531
2  HALLIE VON ROCK #233152

3  aiman-smith marcy

4  7677 oakport street suite 1020
   oakland    california    94621
5  t:510.562.6800  f:510.562.6830

6  Attorneys for Plaintiff
   Salma Aghmane
7

FILED
San Francisco County Superior Court

JUN 27 2013

CLERK OF THE COURT
BY: _____
                    Deputy Clerk

BY FAX

8          IN THE SUPERIOR COURT OF CALIFORNIA

9          IN AND FOR THE COUNTY OF SAN FRANCISCO

10

11  SALMA AGHMANE, an individual,

12         Plaintiff,

13  vs.

14  BANK OF AMERICA CORPORATION;
    BANK OF AMERICA N.A.; MERRILL
15  LYNCH & CO., INC., and DOES One
    through 200,
16
           Defendants.
17

Case No.:

CGC-13-532473

COMPLAINT FOR DAMAGES

JURY DEMANDED

18
19
20
21
22
23
24
25
26
27
28

Complaint for Damages
Aghmane v. Bank of America                    Case no.

Plaintiff is informed and believes and thereon alleges as follows:

## Preliminary Allegations:
### Parties, Jurisdiction, Venue

1.      Defendant Bank of America Corporation does business in California as a nationally chartered bank engaged in the business of finance and banking. Bank of America Corporation is licensed to do business in California, and does substantial business in the State of California, and in the County of San Francisco.

2.      Defendant Bank of America N.A. is a national full-service commercial bank and primary bank subsidiary of Bank of America Corporation, doing substantial business in the State of California an in the County of San Francisco.

3.      Defendant Merrill Lynch & Co., Inc. is the former parent holding company for Merrill Lynch entities prior to its acquisition by Bank of America Corporation. Merrill Lynch & Co., Inc., a direct subsidiary of Bank of America Corporation, is the holding company for Merrill Lynch subsidiaries and operations.

4.      Hereinafter, Defendants Bank of America Corporation, Bank of America N.A., and Merrill Lynch & Co., Inc. will be referred to as DEFENDANTS and/or BANK OF AMERICA.

5.      Plaintiff Salma Aghmane (hereinafter "plaintiff" or "Aghmane") is and at all times pertinent was a competent, adult, Moroccan female, resident in California. Plaintiff was employed by defendant BANK OF AMERICA as a Business Bank Client Manager/Vice President Client Manager in San Francisco, California.

6.      Plaintiff is currently unaware of the true names and capacities of the defendants sued herein as Does One through 200 and therefore sues them by these fictitious names. Plaintiff will amend this complaint to state their true name and capacities when these have been ascertained. The defendants named herein as Does One through 200 are each in some way responsible for the injuries and damages to plaintiff as alleged herein.

7.      The events described herein concern an employment relationship between plaintiff and defendant, arising in and performed in the State of California, City and County of

1   San Francisco.

2   **Preliminary Allegations:**
3   **Factual Background**

4     8.    Plaintiff was employed by BANK OF AMERICA as a Business Bank Client
5   Manager/Vice President Client Manager.

6     9.    Plaintiff was initially hired in May 2008 to work in New York by Senior Vice
7   President, Market Executive, Sherry Minda.

8     10.    Plaintiff was successful in her employment and had an excellent working
9   relationship with Ms Minda, and later with her new Manager Tom Carly (who took over Ms
10   Minda's position when Ms Minda transferred to another location), while employed in New
11   York.

12     11.    In September 2009, Plaintiff needed to relocate to California and was offered the
13   position as a Vice President Client Manager in San Francisco. Plaintiff started working in the
14   San Francisco, California office on October 19, 2009.

15     12.    In her new position in San Francisco, Plaintiff reported to Claudio Cipollina
16   (hereinafter "Cipollina").

17     13.    In the San Francisco office, from approximately mid-2011 through the date of
18   her termination, Plaintiff was the only female in her department.

19     14.    Including locations outside of the San Francisco office, in California, Plaintiff
20   was the only non-white female in her department under Cipollina.

21     15.    Despite plaintiff's success in New York, Cipollina gave plaintiff a substantially
22   inferior portfolio compared to that of her male cohorts.

23     16.    Additionally, plaintiff was not provided leads and new clients in the same
24   manner as that of her male cohorts.

25     17.    Plaintiff also earned less compensation and was not given the same promotional
26   opportunities that her male cohorts received.

27     18.    Thus, during her employment, plaintiff was subject to discrimination in that she
28   was assigned less desirable leads, existing accounts, and transferred accounts, as well as

1  receiving lower compensation and unequal promotional opportunities, than her similarly-
2  situated male cohorts.

3      19.    Despite plaintiff's complaints to Cipollina about not receiving equal treatment,
4  the inequity continued and Cipollina criticized Plaintiff in a gender-biased manner in her last
5  review before her termination, stating that Plaintiff needs to keep her "emotions in check..."

6      20.    Despite these disadvantages, Plaintiff was able to perform in an exemplary
7  fashion and consistently exceeded her goals. However, plaintiff was not able to earn as much
8  as she would have earned had she not been subjected to the discriminatory practices described
9  herein.

10     21.    Not only was plaintiff's performance excellent in spite of the discrimination to
11  which she was subjected, but plaintiff did no act that would subject her to discipline or that
12  would constitute poor performance sufficient to subject her to discipline or termination.

13     22.    On January 9, 2013, Plaintiff was notified by BANK OF AMERICA that a
14  complaint had allegedly been made by Plaintiff's cousin that Plaintiff had debited funds from
15  her account without authorization. Plaintiff was never shown any written complaint or other
16  document regarding any alleged complaint against her.

17     23.    In response, on that same date, Plaintiff wrote a detailed six page voluntary
18  statement explaining how Plaintiff had advanced money to her cousin while her cousin was in
19  the United States; that after her cousin returned to Morocco, her cousin gave plaintiff her log-in
20  information over the telephone for her BANK OF AMERICA account to transfer the funds
21  owed to plaintiff; that plaintiff made the transfers at home while off-duty; and that plaintiff was
22  fully aware that BANK OF AMERICA tracks every transaction on-line and therefore was not
23  attempting to deceive the BANK OF AMERICA with her transactions.

24     24.    Additionally, Plaintiff provided BANK OF AMERICA with all of the receipts
25  for the money advanced by Plaintiff to her cousin, which equaled the amount transferred from
26  the cousin's account to Plaintiff.

27     25.    Plaintiff believed that a reasonable investigation conducted by BANK OF
28  AMERICA would be performed to confirm that Plaintiff did not violate BANK OF AMERICA

1   policies.

2       26.    Instead, after providing her signed statement, Plaintiff was immediately walked
3   out of the BANK OF AMERICA building.

4       27.    Plaintiff e-mailed the supporting documents to BANK OF AMERICA that same
5   day, on January 9, 2013, which shows all of the expenses that Plaintiff advanced to her cousin.

6       28.    Two days later, on January 11, 2013, Cipollina asked Plaintiff to meet him at a
7   restaurant in Novato, California, where he presented Plaintiff with a repayment agreement of
8   $12,800, and asked that she sign or if she did not, Plaintiff would face negative consequences
9   with the BANK OF AMERICA.

10      29.    Fearful that she would be disciplined or terminated from the BANK OF
11  AMERICA if she did not sign the repayment agreement, although she did not believe that she
12  owed anything to BANK OF AMERICA, Plaintiff agreed to sign the repayment agreement.

13      30.    After Plaintiff signed the repayment greement and handed it to Cipollina, he
14  presented Plaintiff with a termination letter along with her final paycheck.

15      31.    BANK OF AMERICA did not reasonably investigate any purported complaints
16  against Plaintiff and then coerced her into signing a repayment agreement before terminating
17  Plaintiff.

18      32.    Plaintiff was due to be paid a significant six-figure bonus, already earned for her
19  performance in 2012, on February 15, 2013.

20      33.    Because Plaintiff was terminated on January 11, 2013, BANK OF AMERICA
21  did not pay plaintiff the bonus due to her.

22      34.    Plaintiff has observed in her career at BANK OF AMERICA that other male
23  cohorts have been paid their bonus when terminated.

24      35.    At the time of plaintiff's termination, she had established, through years of hard
25  work, a very valuable portfolio, which would be given to her male cohorts and her
26  replacement, a white male, after her termination.

27      36.    Plaintiff's replacement, a white male, with less credit experience than Plaintiff,
28  was hired at a higher salary and title than Plaintiff, who had been in the position for several

1  years.

2   37.   Thus, BANK OF AMERICA failed to prevent discrimination against plaintiff
3  and failed to pay plaintiff equally to her male counterparts.

4   38.   Following Plaintiff's termination, BANK OF AMERICA took the affirmative
5  step of contacting Early Warning Services, LLC (hereinafter "EWS"), which is a limited
6  liability company owned by Bank of America Corporation, BB&T, Capital One, JPMorgan
7  Chase and Wells Fargo, that provides consumer reports for the financial industry.

8   39.   On its website, EWS states: "Early Warning is known throughout the financial
9  services industry as a leader in fraud prevention and risk management." Thus, banks run
10  reports on prospective employees through EWS, which purports to warn employers about
11  employees who have been flagged by past employers for engaging in fraudulent activity.

12   40.   BANK OF AMERICA blacklisted Plaintiff on EWS by reporting that Plaintiff
13  had an "Unfavorable Employment Record."

14   41.   It is well-known in the banking industry that an "Unfavorable Employment
15  Record" in EWS will essentially block an employee from future employment.

16   42.   BANK OF AMERICA relied on inaccurate, false information, disputed by
17  Plaintiff, in a malicious manner to publish that plaintiff had an "Unfavorable Employment
18  Record," despite plaintiff's tremendous success in exceeding her goals during her employment
19  at BANK OF AMERICA.

20   43.   As a result of BANK OF AMERICA's inaccurate reporting of Plaintiff as having
21  an "Unfavorable Employment Record" in EWS, Plaintiff's offer of employment with
22  JPMorgan Chase & Co. (hereinafter, "JPMorgan") was rescinded.  Specifically, after offering
23  Plaintiff a lucrative position, JPMorgan ran a consumer check with EWS.  The only negative
24  information on Plaintiff's consumer report with EWS is from BANK OF AMERICA.
25  Following its check with EWS, JPMorgan wrote to Plaintiff and stated, "Offer of Employment
26  Rescinded - Our decision was based, in whole or in part, on information obtained from the
27  consumer reporting agency listed below...Early Warning Services, LLC"

28   44.   Plaintiff is informed and believes, and thereon alleges that, as part of its

Complaint for Damages
*Aghinine v. Bank of America*
Page 5

Case no.

1  investigative process, BANK OF AMERICA has a policy permitting employees under
2  investigation for any wrongdoing to review and contest any allegations or preliminary findings
3  of such conduct so that BANK OF AMERICA could arrive at the truth of the matter, and
4  generally conducted its investigations according to this policy. Plaintiff was never permitted to
5  review any complaint made against her nor did BANK OF AMERICA ever provide Plaintiff
6  with a copy of its preliminary findings. Rather, plaintiff was confronted on January 9, 2013 by
7  BANK OF AMERICA that a complaint had been made, although the specifics of the complaint
8  or any documentation of any alleged complaint were never presented to plaintiff. In an attempt
9  to figure out on her own what the Bank might be referring to, plaintiff wrote a detailed
10  response and provided supporting documents. Plaintiff was not contacted again regarding any
11  investigation until over four months later when Plaintiff was summarily terminated and
12  coerced into signing a repayment agreement for funds Plaintiff claims were legitimately owed
13  and properly paid to her.

14      45.    BANK OF AMERICA's failure to allow Plaintiff to contest the allegations of
15  any complaint, by never showing it to plaintiff, by never presenting any documents of any
16  alleged complaints, by never presenting any evidence to plaintiff of any wrongdoing, and by
17  never presenting any preliminary findings by BANK OF AMERICA, constitutes a purposeful,
18  reckless, and wanton avoidance of the truth, and/or the product of a deliberate decision not to
19  acquire knowledge of facts that might confirm the probable falsity of the subject charges.

20      46.    If BANK OF AMERICA had complied with its own policy of permitting
21  employees to review and adequately contest the allegations and preliminary findings against
22  them, BANK OF AMERICA would have learned that Plaintiff did not engage in any
23  wrongdoing, there was no basis for her termination, and that there was no basis for blacklisting
24  plaintiff as having an "Unfavorable Employment Record" on EWS.

25      47.    BANK OF AMERICA's actions were undertaken as part of its ongoing
26  discriminatory treatment toward Plaintiff. BANK OF AMERICA's purposeful avoidance of
27  the truth and deliberate decision not to acquire facts that would have confirmed the falsity of
28  the subject charges (e.g., by permitting Plaintiff an opportunity to review any alleged

1  complaints and respond to how any such complaint was false) was despicable and was done

2  with a conscious disregard for the consequences of the rights of the Plaintiff to be free from

3  false allegations of having an unfavorable employment record (especially, after consistently

4  exceeding her goals while employed) and the reporting of an unfavorable employment record

5  on a consumer report synonymous with reports for fraud, in the banking industry in a manner

6  in which all banking institutions and any institution which requires trust, honesty, integrity and

7  fidelity as a prerequisite to employment would deny Plaintiff employment.

8      48.     Further, the actions of BANK OF AMERICA were despicable because they were

9  made without foundation and it knew, as a co-owner of EWS, that its report to EWS of

10  plaintiff as having an "Unfavorable Employment Record" would essentially prevent Plaintiff

11  from obtaining work in the financial industry.' Additionally, the actions of BANK OF

12  AMERICA constituted material misrepresentations of Plaintiff's employment performance

13  because Plaintiff consistently exceeded her goals (for example in the first half of 2012,

14  Plaintiff had a 134% composite for her goals, which increased even higher by the end of 2012)

15  and had an effort been made to determine the truth of the alleged grounds for the "Unfavorable

16  Employment Record," BANK OF AMERICA would have determined that Plaintiff did not

17  engage in wrongdoing. The purported investigation underlying the grounds for the

18  "Unfavorable Employment Record," did not comply with principles of due process in that

19  Plaintiff was not given an opportunity of what actual complaints had been made against her nor

20  was she given the opportunity to adequately contest the unknown propriety of such charges,

21  thus resulting Plaintiff's employment offer with JPMorgan being rescinded and denying her the

22  ability to find future employment with any financial industry which uses EWS.

23      49.     Plaintiff was not informed of BANK OF AMERICA's preliminary findings and

24  received no information regarding any purported investigation by BANK OF AMERICA.

25  Rather, Plaintiff was coerced into signing a repayment agreement and then summarily

26  terminated.

27      50.     Plaintiff did not learn of BANK OF AMERICA's supposed findings, or of the

28  subsequent publication/republication of its findings, until her employment offer from

1  JPMorgan was rescinded. BANK OF AMERICA never notified plaintiff that it had made a

2  negative report to EWS or that plaintiff had the right to contest BANK OF AMERICA's

3  negative report to EWS.

4      51.    Only after plaintiff received the letter from JPMorgan rescinding her

5  employment offer did plaintiff learn of BANK OF AMERICA's negative report. Plaintiff

6  contacted EWS, which informed plaintiff that BANK OF AMERICA inputs the report code

7  and that EWS was not provided any facts or other information regarding the report.

8      52.    Thereafter, plaintiff requested her personnel file and other employment related

9  documents from BANK OF AMERICA. On May 17, 2013, BANK OF AMERICA provided

10  documents purporting to include "personnel and wage records relating to Ms. Aghmane's

11  employment." Plaintiff reviewed the file upon receiving it. It did not include any documents

12  pertaining to any alleged complaint against plaintiff; any witness statements to substantiate the

13  bank's accusations; any evidence of fraud or wrongdoing by plaintiff; any investigation reports

14  or findings or any investigation materials at all, except for plaintiff's written voluntary

15  statement made on January 9, 2013.

16      53.    Plaintiff is further informed and believes, and thereon alleges, that BANK OF

17  AMERICA did not receive an actual complaint against plaintiff; that if a complaint was made,

18  it was later rescinded or unsubstantiated; or that if a complaint was made, such complaint was

19  false and plaintiff would have been able to prove as much if provided the opportunity to

20  contest the specifics of any such complaint. However, BANK OF AMERICA's actions show

21  that it purposefully avoided seeking the truth of any alleged complaints against Plaintiff and

22  instead, wrongfully terminated plaintiff and blacklisted Plaintiff in the financial industry.

23      54.    Plaintiff, therefore, contends BANK OF AMERICA's termination decision and

24  subsequent report to EWS (and any other potential consumer reporting agency which plaintiff

25  has not been informed about) were based on discrimination and further constitutes malice,

26  fraud and oppression on the part of BANK OF AMERICA.

27  ///

28  ///

**First Cause of Action**
**Violation of Fair Employment and Housing Act**
**(Government Code Section 12940, et seq.)**

55. Plaintiff here realleges all the preceding paragraphs of this complaint as though fully set forth.

56. The actions of DEFENDANTS, and each of them, as described herein constitute discrimination on the basis of gender, race, and national origin as forbidden by Government Code section 12940 and subparts, including, *inter alia*, subdivisions (a), (c), (i), (j), and (k) and plaintiff is entitled to recover general and special damages therefore.

57. Plaintiff alleges that she was denied a work environment free of discrimination and/or retaliation, denied equal pay, denied promotion, denied bonuses, wrongfully terminated, and labeled as having an "Unfavorable Employment Record" in EWS.

58. The acts of DEFENDANTS were done knowingly, willfully, wantonly, oppressively, and maliciously, and plaintiff is entitled to recover punitive and exemplary damages therefor.

59. As a result of the acts of DEFENDANTS, plaintiff has been forced to hire an attorney and to bring this suit and plaintiff is entitled to recover her attorney's fees.

60. Plaintiff has exhausted all administrative remedies required by law in that, within the time provided by statute, plaintiff filed a complaint with California's Department of Fair Employment and Housing and has received a "right to sue" letter from said Department.

61. Accordingly, Plaintiff has been damaged in an amount according to proof and in excess of the jurisdictional minimum of this Court.

**Second Cause of Action**
**Violation of California Equal Pay Act**
**(Labor Code Section 1197.5, et seq.)**

62. Plaintiff here realleges all the preceding paragraphs of this complaint as though fully set forth.

63. No employer shall pay any individual in the employer's employ at wage rates less than the rates paid to employees of the opposite sex in the same establishment for equal work on jobs the performance of which requires equal skill, effort, and responsibility, and

1   which are performed under similar working conditions, except where the payment is made
2   pursuant to a seniority system, a merit system, a system which measures earnings by quantity
3   or quality of production, or a differential based on any bona fide factor other than sex. *See,*
4   Labor Code §1197.5, et seq.

5       64.    Plaintiff alleges that she was denied equal pay, denied promotion which would
6   have resulted in higher wages, and denied bonuses by DEFENDANTS on the basis of her sex.

7       65.    As a result of the acts of DEFENDANTS, and each of them, BANK OF
8   AMERICA is liable to Plaintiff in the amount of the wages, and interest thereon, of which
9   Plaintiff was deprived by reason of the violation, and in an additional equal amount as
10  liquidated damages, together with the costs of bringing this law suit and reasonable attorney's
11  fees.

12      66.    Accordingly, Plaintiff has been damaged in an amount according to proof and in
13  excess of the jurisdictional minimum of this Court.

14                          **Third Cause of Action**
                              **Blacklisting**
15                     **(Labor Code Section 1050, et seq.)**

16      67.    Plaintiff here realleges all paragraphs of this complaint as though fully set forth.

17      68.    Plaintiff was hired to work for BANK OF AMERICA in May 2008 and
18  continued in her employment relationship until she was terminated in January 2013.  Plaintiff
19  consistently exceeded her employment goals and received favorable reviews for her work.

20      69.    Plaintiff was terminated on January 11, 2013, and contends that such termination
21  was in violation of the Fair Employment and Housing Act.

22      70.    Subsequent to Plaintiff's termination, BANK OF AMERICA falsely informed
23  EWS that Plaintiff had committed serious violations that caused her to be rated as
24  "Unfavorable Employment Record."  As a co-owner of EWS, BANK OF AMERICA knew or
25  should have known that its negative report of Plaintiff would become known to prospective
26  employers, that because Plaintiff had been terminated by BANK OF AMERICA that she
27  would be in need of new employment in the banking industry, and that the result would be
28  plaintiff's preclusion of future employment in the banking industry.  In fact, plaintiff's future

1  employer, JPMorgan, rescinded its employment offer after running a consumer check with
2  EWS, in which the only negative report is from BANK OF AMERICA.

3  71.  As a proximate result of BANK OF AMERICA's intentional misrepresentations,
4  Plaintiff has been prevented from obtaining a position in the banking industry comparable to
5  her position at BANK OF AMERICA, causing damage to Plaintiff in an amount to be proved
6  at trial.

7  72.  The reports of BANK OF AMERICA which were ultimately reported by EWS
8  were made and authorized by BANK OF AMERICA to prevent Plaintiff from continuing
9  employment in the banking industry. These reports constitute "black listing" of the Plaintiff in
10  violation of Labor Code sections 1050 through 1054 in that after BANK OF AMERICA
11  discharged Plaintiff from service, BANK OF AMERICA made a misrepresentation that
12  prevents or attempts to prevent Plaintiff from obtaining employment. Plaintiff is effectively
13  barred from employment in the banking industry as to any financial institution utilizing EWS
14  (or any other consumer agency that BANK OF AMERICA has reported negatively to
15  regarding Plaintiff), as has already been demonstrated in her losing a position with JPMorgan,
16  which actions are prohibited by California State Law.

17  73.  As a direct result of such actions, Plaintiff has been damaged by losing a
18  lucrative position with JPMorgan and, therefter, being prevented from employment in the
19  banking industry as to any financial institution utilizing EWS (or any other consumer agency
20  that BANK OF AMERICA has reported negatively to regarding Plaintiff). Pursuant to Labor
21  Code section 1054, Plaintiff is entitled to treble damages as a consequence of the acts of the
22  DEFENDANTS.

23                          Fourth Cause of Action
                                Defamation

24  74.  Plaintiff here realleges all paragraphs of this complaint as though fully set forth.

25  75.  During and subsequent to Plaintiff's employment with BANK OF AMERICA,
26  DEFENDANTS made statements about Plaintiff of a false and defamatory nature and in a
27  malicious manner, thereby disparaging Plaintiff and preventing Plaintiff from engaging in

1  employment at JPMorgan and elsewhere.

2      76.    Subsequent to Plaintiff's employment with BANK OF AMERICA,
3  DEFENDANTS caused to be published and/or republished such false and defamatory
4  statements about Plaintiff, thereby causing Plaintiff economic and non-economic damage.

5      77.    DEFENDANTS published the false and defamatory publication to others
6  knowing that subsequent republication to persons interested in the Plaintiff's past employment
7  history was reasonably foreseeable.

8      78.    As set forth and alleged above, these false and defamatory statements include but
9  are not limited to an allegation that Plaintiff had an "Unfavorable Employment Record" while
10 employed by BANK OF AMERICA to EWS, a company "known throughout the financial
11 services industry as a leader in fraud prevention," thus insinuating that Plaintiff had engaged in
12 fraudulent activity while employed by BANK OF AMERICA, in a position of trust dealing
13 with access to personal information regarding customers of BANK OF AMERICA.

14     79.    Each of the defamatory statements made and/or published by DEFENDANTS
15 about Plaintiff was made with express malice, in bad faith, without belief in the truth of the
16 matter published, and/or with reckless disregard of the truth or falsity of the matter stated.

17     80.    Each of these statements harmed Plaintiff's reputation among her clients of
18 BANK OF AMERICA, her former colleagues of BANK OF AMERICA, and in the general
19 business community, and deterred other third parties from associating, dealing, and employing
20 or continuing employment of Plaintiff.

21     81.    Each of the defamatory statements was also defamatory per se because the
22 statements ascribe characteristics to the Plaintiff which are incompatible with the proper
23 conduct of Plaintiff's chosen business and profession. The defamatory statements have injured
24 Plaintiff in her reputation and continue to injure Plaintiff and her reputation among her former
25 colleagues, clients, and in the business community generally.

26     82.    It is reasonably foreseeable that DEFENDANTS' published allegation that
27 Plaintiff had an "Unfavorable Employment Record" would cause Plaintiff damage. As a direct
28 and proximate result of the publication of false and defamatory statements by DEFENDANTS,

1   Plaintiff has suffered and continues to suffer substantial damages.

2       83.    The actions of the DEFENDANTS were willful, wanton, fraudulent, oppressive,

3   and malicious. These acts were authorized and/or ratified by managing agents of BANK OF

4   AMERICA. Moreover, despite Plaintiff contesting the facts underlying that allegedly form the

5   basis of DEFENDANTS' malicious publication on EWS (and potentially other consumer

6   reports that Plaintiff has not yet been made aware of), BANK OF AMERICA still published

7   the defamatory statements, which further constitutes ratification of the actions of corporate

8   agents making the false claims. All of these actions entitle the Plaintiff to recover punitive

9   damages against the DEFENDANTS and each of them.

                            Fifth Cause of Action
10                   Intentional Infliction of Emotional Distress_

11      84.    Plaintiff here realleges all paragraphs of this complaint as though fully set forth.

12      85.    Plaintiff claims that BANK OF AMERICA's conduct caused her to suffer severe

13  emotional distress in that DEFENDANTS' conduct was outrageous and intended to cause

14  Plaintiff emotional distress; or that DEFENDANTS' acted with reckless disregard of the

15  probability that Plaintiff would suffer emotional distress, knowing that Plaintiff was present

16  when the conduct occurred; and that Plaintiff suffered severe emotional distress; and that

17  DEFENDANTS' conduct was a substantial factor in causing Plaintiff's severe emotional

18  distress.

19      86.    As a direct and proximate result of the acts of defendants and each of them as

20  alleged herein, including but not limited to, subjecting Plaintiff to discriminatory treatment

21  during her employment, wrongfully terminating Plaintiff on the basis of discrimination, and/or

22  making false statements about Plaintiff to EWS knowing that such statements would be

23  published, Plaintiff has suffered humiliation, mental anguish, and emotional and physical

24  distress.

25      87.    Furthermore, by reasons of the acts alleged above, Plaintiff has been prevented

26  from attaining a comparable position, Plaintiff was without employment for a substantial

27  period of time, Plaintiff was coerced into a repayment agreement with BANK OF AMERICA

28

1  which she contends she was not obligated to repay but did so only on fear of losing her job

2  with BANK OF AMERICA, Plaintiff was prevented from obtaining a lucrative position with

3  JPMorgan, Plaintiff will be prevented from future employment with any bank or other financial

4  industry that uses EWS (or any other consumer reporting service that BANK OF AMERICA

5  has provided negative and false statements about her employment with BANK OF

6  AMERICA), and will thereby sustain further loss of earnings.

7       88.    Furthermore, by reasons of the acts alleged above, Plaintiff is entitled to an

8  award of punitive damages against the DEFENDANTS.

9  **Sixth Cause of Action**<br>**Negligent Infliction of Emotional Distress**

10

11       89.    Plaintiff here realleges all paragraphs of this complaint as though fully set forth.

12       90.    Plaintiff claims that BANK OF AMERICA's conduct caused her to suffer

13  serious emotional distress. Plaintiff claims that DEFENDANTS were negligent; Plaintiff

14  suffered serious emotional distress; and that DEFENDANTS' negligence was a substantial

15  factor in causing Plaintiffs' serious emotional distress.

16       91.    During Plaintiff's employment, she was subjected to discriminatory treatment by

17  BANK OF AMERICA and ultimately wrongfully terminated on these grounds. Furthermore,

18  subsequent to Plaintiff's termination, DEFENDANTS published false statements about

19  Plaintiff as having an "Unfavorable Employment Record." To the extent that DEFENDANTS

20  did not reasonably investigate the motives for Plaintiff's termination and/or did not reasonably

21  investigate the alleged facts underlying its "Unfavorable Employment Record" rating of

22  Plaintiff, DEFENDANTS acted negligently.

23       92.    As a direct and proximate result of the acts of DEFENDANTS and each of them

24  as alleged herein, and set forth above, plaintiff has suffered serious emotional distress.

25  Accordingly, Plaintiff has suffered damages according to proof.

26  **Seventh Cause of Action**<br>**Intentional Interference with Economic Advantage**

27       93.    Plaintiff here realleges all paragraphs of this complaint as though fully set forth.

28       94.    By doing the acts complained of herein, DEFENDANTS and each of them

1  intentionally interfered with plaintiff's probable prospective employment and the economic

2  advantage that would accrue to Plaintiff's benefit had BANK OF AMERICA not made false

3  statements about Plaintiff to EWS (and any other consumer reporting service that BANK OF

4  AMERICA has provided negative and false statements about her employment with BANK OF

5  AMERICA).

6    95.    In terminating Plaintiff, BANK OF AMERICA had reason to know that Plaintiff

7  would be searching for new employment in the banking and business field, which has been her

8  long term career. Defendants and each of them made false statements that prevents plaintiff

9  from obtaining employment with any bank, financial institution, or other employer who runs a

10  report from EWS (and any other consumer reporting service that BANK OF AMERICA has

11  provided negative and false statements about her employment with BANK OF AMERICA).

12    96.    As a direct and proximate result of the acts of defendants and each of them as

13  alleged herein, plaintiff has suffered damages according to proof.

**Eighth Cause of Action**
**Negligent Interference with Economic Advantage**

14
15    97.    Plaintiff here realleges all paragraphs of this complaint as though fully set forth.

16    98.    By doing the acts complained of herein, defendants and each of them negligently

17  interfered with plaintiff's probable prospective employment and the economic advantage that

18  would accrue to plaintiff's benefit had BANK OF AMERICA not made false statements about

19  Plaintiff to EWS (and any other consumer reporting service that BANK OF AMERICA has

20  provided negative and false statements about her employment with BANK OF AMERICA).

21    99.    In terminating Plaintiff, BANK OF AMERICA had reason to know that Plaintiff

22  would be searching for new employment in the banking and business field, which has been her

23  long term career. Subsequent to Plaintiff's termination, DEFENDANTS published false

24  statements about Plaintiff as having an "Unfavorable Employment Record." To the extent that

25  DEFENDANTS did not reasonably investigate the alleged facts underlying its "Unfavorable

26  Employment Record" rating of Plaintiff, DEFENDANTS acted negligently.

27    100.    As a direct and proximate result of the acts of defendants and each of them as

28

1   alleged herein, plaintiff has suffered damages according to proof.

2      Wherefore, plaintiff prays for relief as follows:

3      1.    For general and special damages according to proof;

4      2.    for interest upon said damages at the maximum rate allowed by statute;

5      3.    for liquidated damages;

6      4.    for punitive and exemplary damages;

7      5.    for attorney's fees as permitted by statute or common law;

8      6.    for costs of suit incurred; and

9      7.    for such other and further relief as the Court may deem just and proper.

10

11 Dated: June 27, 2013              alman-smith & marcy

12

13

14                  Hallie Von Rock
                 Attorneys for Plaintiff Salma Aghmane

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Complaint for Damages
Aghmane v. Bank of America
Page 16                  Case no.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a jury on all causes of action and claims with respect to which she has a right to jury trial.

Dated: June 27, 2013

aiman-smith marcy

Hallie Von Rock
Attorneys for Plaintiff Salma Aghmane



# Superior Court of California, County of San Francisco
## Alternative Dispute Resolution
## Program Information Package



> The plaintiff must serve a copy of the ADR information package
> on each defendant along with the complaint. (CRC 3.221(c))

## WHAT IS ADR?
Alternative Dispute Resolution (ADR) is the term used to describe the various options available for settling a dispute without a trial. There are many different ADR processes, the most common forms of which are mediation, arbitration and settlement conferences. In ADR, trained, impartial people decide disputes or help parties decide disputes themselves. They can help parties resolve disputes without having to go to court.

## WHY CHOOSE ADR?
"It is the policy of the Superior Court that every noncriminal, nonjuvenile case participate either in an early settlement conference, mediation, arbitration, early neutral evaluation or some other alternative dispute resolution process prior to trial." (Local Rule 4 )

ADR can have a number of advantages over traditional litigation:

- **ADR can save time.** A dispute often can be resolved in a matter of months, even weeks, through ADR, while a lawsuit can take years.
- **ADR can save money,** including court costs, attorney fees, and expert fees.
- **ADR encourages participation.** The parties may have more opportunities to tell their story than in court and may have more control over the outcome of the case.
- **ADR is more satisfying.** For all the above reasons, many people participating in ADR have reported a high degree of satisfaction.

## HOW DO I PARTICIPATE IN ADR?
Litigants may elect to participate in ADR at any point in a case. General civil cases may voluntarily enter into the court's ADR programs by any of the following means:

- Filing a Stipulation to ADR: Complete and file the Stipulation form (attached to this packet) at the clerk's office located at 400 McAllister Street, Room 103;
- Indicating your ADR preference on the Case Management Statement (also attached to this packet); or
- Contacting the court's ADR office (see below) or the Bar Association of San Francisco's ADR Services at 415-982-1600 or www.sfbar.org/adr for more information.

**For more information about ADR programs or dispute resolution alternatives, contact:**

Superior Court Alternative Dispute Resolution
400 McAllister Street, Room 103, San Francisco, CA 94102
415-551-3876

*Or, visit the court ADR website at www.sfsuperiorcourt.org*

The San Francisco Superior Court currently offers three ADR programs for general civil matters; each program is described below:

## 1) EARLY SETTLEMENT CONFERENCES

The goal of early settlement is to provide participants an opportunity to reach a mutually acceptable settlement that resolves all or part of a dispute.

**(A) THE BAR ASSOCIATION OF SAN FRANCISCO (BASF) EARLY SETTLEMENT PROGRAM (ESP):** This program, provided in conjunction with the court, pairs parties with a two-member volunteer attorney panel. The panels are comprised of one plaintiff and one defense attorney, each with at least 10 years of trial experience. On occasion, a panelist with extensive experience in both plaintiff and defense roles serves as a sole panelist.

**Operation:** The settlement conference typically occurs 2 to 3 months prior to the trial date. BASF informs the participants of the conference date well in advance and provides the names of the panelists and location of the conference approximately 2 weeks prior to the conference. Panelists provide at **no cost** up to 2 hours of their time at each conference, and many panelists provide additional time at no cost if a settlement is imminent. A conference typically begins with a brief meeting with all parties and their attorneys during which each side presents an initial statement. The panelists then assist the parties in understanding and candidly discussing the strengths and weaknesses of their cases, utilizing private meetings as appropriate. If a case does not settle during the first two hours, parties have the option to hire the panelists to continue the conference.

**Cost:** BASF charges an administrative fee of $250 per party. For information on fees for cases involving multiple parties, please contact BASF. Parties who meet certain eligibility requirements may request a waiver of the fee. For more information, please contact BASF's ESP Coordinator at 415-782-9000 ext. 8717 or visit www.sfbar.org/esp.

**(B) COURT SETTLEMENT CONFERENCE:** Parties may elect to apply to the Presiding Judge's department for a specially-set mandatory settlement conference. See Local Rule 5.0 for further instructions. Upon approval of the Presiding Judge, the court will schedule the conference and assign the case for a settlement conference.

## 2) MEDIATION

Mediation is a voluntary, flexible, and confidential process in which a neutral third party facilitates negotiations. The goal of mediation is to reach a mutually satisfactory agreement, before incurring the expense of going to court, that resolves all or part of a dispute after exploring the interests, needs, and priorities of the parties in light of relevant evidence and the law. A mediator strives to bring the parties to a mutually beneficial settlement of the dispute.

**(A) MEDIATION SERVICES OF THE BAR ASSOCIATION OF SAN FRANCISCO,** in cooperation with the Superior Court, is designed to help civil litigants resolve disputes before they incur substantial costs in litigation. While it is best to utilize the program at the outset of litigation, parties may use the program at any time while a case is pending.

**Operation:** A mediator provides at **no cost** one hour of preparation time and two hours of mediation time. After those three hours, if the case is not resolved, parties have the option to continue the process and pay the mediator at his or her regular hourly rate. BASF pre-screens all mediators based upon strict educational and experience requirements. Parties may select a specific mediator or BASF will help the parties make a selection. The BASF website contains photographs, biographies, and videos of the mediators as well as testimonials to assist with the selection process.

**Cost:** BASF charges an administrative fee of $250 per party. For information on fees for cases involving multiple parties, please contact BASF. The hourly mediator fee beyond the first three hours will vary depending on the mediator selected. Parties who meet certain eligibility requirements may request a waiver of the fee. For more information, please contact BASF's Mediation Coordinator at 415-782-9000 ext. 8787 or visit www.sfbar.org/mediation.

**(B) PRIVATE MEDIATION:** Although not currently a part of the court's ADR program, civil disputes may also be resolved through private mediation. Parties may elect any private mediator or mediation organization of their choice; the selection and coordination of private mediation is the responsibility of the parties. Parties may find mediators and organizations on the Internet. The cost of private mediation will very depending on the mediator selected.

## 3) ARBITRATION

An arbitrator is neutral attorney who presides at a hearing where the parties present evidence through exhibits and testimony. The arbitrator applies the law to the facts of the case and makes an award based upon the merits of the case.

**(A) JUDICIAL ARBITRATION:** When the court orders a case to arbitration it is called "judicial arbitration". The goal of arbitration is to provide parties with an adjudication that is earlier, faster, less formal, and usually less expensive than a trial.

**Operation:** Pursuant to CCP 1141.11 and Local Rule 4, all civil actions in which the amount in controversy is $50,000 or less, and no party seeks equitable relief, shall be ordered to arbitration. (Upon stipulation of all parties, other civil matters may be submitted to judicial arbitration.) A case is ordered to arbitration after the Case Management Conference. An arbitrator is chosen from the court's Arbitration Panel. Arbitrations are generally held between 7 and 9 months after a complaint has been filed. Judicial arbitration is not binding unless all parties agree to be bound by the arbitrator's decision. Any party may request a trial within 30 days after the arbitrator's award has been filed.

Local Rule 4.2 allows for mediation in lieu of judicial arbitration, so long as the parties file a stipulation to mediate after the filing of a complaint. If settlement is not reached through mediation, a case proceeds to trial as scheduled.

**Cost:** There is no cost to the parties for judicial arbitration.

**(B) PRIVATE ARBITRATION:** Although not currently a part of the court's ADR program, civil disputes may also be resolved through private arbitration. Here, the parties voluntarily consent to arbitration. If all parties agree, private arbitration may be binding and the parties give up the right to judicial review of the arbitrator's decision. In private arbitration, the parties select a private arbitrator and are responsible for paying the arbitrator's fees.

**EXHIBIT B**

 CT Corporation

**TO:**   CA LegaLit
Bank of America
Litigation Intake, CA6-915-01-17
30870 RUSSELL RANCH RD
Westlake Village, CA 91362

**RE:**   **Process Served in California**

**FOR:**   Bank of America, National Association (Domestic State: N/A)

---

**ENCLOSED ARE COPIES OF LEGAL PROCESS RECEIVED BY THE STATUTORY AGENT OF THE ABOVE COMPANY AS FOLLOWS:**

| | |
|---|---|
| **TITLE OF ACTION:** | Salma Aghmane, etc., Pltf. vs. Bank of America Corporation, et al. including Bank of America, N.A., Dfts. *Name discrepancy noted.* |
| **DOCUMENT(S) SERVED:** | Summons, Notice, Cover Sheet, Complaint, Demand for Jury Trial, ADR Packets |
| **COURT/AGENCY:** | San Francisco County - Superior Court - San Francisco, CA Case # CGC13532473 |
| **NATURE OF ACTION:** | Employee Litigation - Discrimination - Wrongful termination on the basis of gender, race and national origin |
| **ON WHOM PROCESS WAS SERVED:** | C T Corporation System, Los Angeles, CA |
| **DATE AND HOUR OF SERVICE:** | By Process Server on 07/11/2013 at 17:57 |
| **JURISDICTION SERVED :** | California |
| **APPEARANCE OR ANSWER DUE:** | Within 30 days after service - File written response // November 27, 2013 at 10:30 a.m. - Case Management Conference // No later than 15 days before the date set for Case Management Review/Conference - File and Serve Case Management Statement |
| **ATTORNEY(S) / SENDER(S):** | Randall B. Aiman-Smith Aiman-Smith & Marcy PC 7677 Oakport Street, Suite 1020 Oakland, CA 94621 510-562-6800 |
| **ACTION ITEMS:** | CT has retained the current log, Retain Date: 07/11/2013, Expected Purge Date: 07/16/2013 Image SOP Email Notification, CA LegaLit calegalit@bankofamerica.com |
| **SIGNED:** | C T Corporation System |
| **PER:** | Nancy Flores |
| **ADDRESS:** | 818 West Seventh Street Los Angeles, CA 90017 |
| **TELEPHONE:** | 213-337-4615 |

Information displayed on this transmittal is for CT Corporation's record keeping purposes only and is provided to the recipient for quick reference. This information does not constitute a legal opinion as to the nature of action, the amount of damages, the answer date, or any information contained in the documents themselves. Recipient is responsible for interpreting said documents and for taking appropriate action. Signatures on certified mail receipts confirm receipt of package only, not contents.

7/11 @3:31(?)

SUM-100

**SUMMONS**
*(CITACION JUDICIAL)*

FOR COURT USE ONLY
*(SOLO PARA USO DE LA CORTE)*

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*
BANK OF AMERICA CORPORATION; BANK OF AMERICA N.A.;
MERRILL LYNCH & CO., INC., and DOES One through 200

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*
SALMA AGHMANE, an individual

NOTICE! You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (www.lawhelpcalifornia.org), the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), or by contacting your local court or county bar association. NOTE: The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.

¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.

Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.

Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.

The name and address of the court is:
*(El nombre y dirección de la corte es):* San Francisco County Superior Court

CASE NUMBER
*(Número del Caso):* C G C - 1 3 - 5 3 2 4 7 3

400 McAllister Street
San Francisco, CA 94102

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
Randall Alman-Smith, Alman-Smith & Marcy, 7677 Oakport St. #1020, Oakland, CA 94621, (510) 562-6800

| DATE: June 27, 2013 *(Fecha)* | CLERK OF THE COURT | Clerk, by *(Secretario)* | , Deputy *(Adjunto)* |

KEITH D. TOM

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)*
*(Para prueba de entrega de esta citatión use el formulario Proof of Service of Summons, (POS-010).)*

NOTICE TO THE PERSON SERVED: You are served

[SEAL]

1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify):*

**BY FAX**

3. ☒ on behalf of *(specify):* Bank of America N.A.

   under: ☒ CCP 416.10 (corporation) ☐ CCP 416.60 (minor)
   ☐ CCP 416.20 (defunct corporation) ☐ CCP 416.70 (conservatee)
   ☐ CCP 416.40 (association or partnership) ☐ CCP 416.90 (authorized person)
   ☐ other *(specify):*

4. ☐ by personal delivery on *(date):*

Page 1 of 1

Form Adopted for Mandatory Use
Judicial Council of California
SUM-100 [Rev. July 1, 2009]

**SUMMONS**

Code of Civil Procedure §§ 412.20, 465
www.courtinfo.ca.gov

CASE NUMBER: CGC-13-532473  SALMA AGHMANE VS. BANK OF AMERICA CORPORATION

## NOTICE TO PLAINTIFF

A Case Management Conference is set for:

| | |
|---|---|
| **DATE:** | NOV-27-2013 |
| **TIME:** | 10:30AM |
| **PLACE:** | Department 610 |
| | 400 McAllister Street |
| | San Francisco, CA  94102-3680 |

All parties must appear and comply with Local Rule 3.

CRC 3.725 requires the filing and service of a case management statement form CM-110 no later than 15 days before the case management conference.

However, it would facilitate the issuance of a case management order

without an appearance

statement is filed, served and lodged in Department 610

twenty-five (25) days before the case management

Plaintiff must serve a copy of this notice upon each party to this action with the summons and complaint. Proof of service subsequently filed with this court shall so state.

### ALTERNATIVE DISPUTE RESOLUTION POLICY REQUIREMENTS

IT IS THE POLICY OF THE SUPERIOR COURT THAT EVERY CIVIL CASE PARTICIPATE IN EITHER MEDIATION, JUDICIAL OR NON-JUDICIAL ARBITRATION, THE EARLY SETTLEMENT PROGRAM OR SOME SUITABLE FORM OF ALTERNATIVE DISPUTE RESOLUTION PRIOR TO A TRIAL.
(SEE LOCAL RULE 4)

Plaintiff must serve a copy of the Alternative Dispute Resolution Information Package on each defendant along with the complaint. All counsel must discuss ADR with clients and opposing counsel and provide clients with a copy of the Alternative Dispute Resolution Information Package prior to filing the Case Management Statement.

[DEFENDANTS: Attending the Case Management Conference does not take the place of filing a written response to the complaint. You must file a written response with the court within the time limit required by law. See Summons.]

Superior Court Alternative Dispute Resolution Coordinator
400  McAllister Street, Room 103
San Francisco, CA  94102
(415) 551-3876

See Local Rules 3.3, 6.0 C and 10 B re stipulation to judge pro tem.

ATTORNEY OR PARTY WITHOUT ATTORNEY (Name, State Bar number, and address):
Randall B. Aiman-Smith (#124599), Hallie Von Rock (#233152)
Aiman-Smith & Marcy PC
7677 Oakport Street, Suite 1020
Oakland, CA 94621
TELEPHONE NO.: (510) 562-6800    FAX NO.: (510) 562-6830
ATTORNEY FOR (Name): Plaintiff Salma Aghmane

**FOR COURT USE ONLY**

SUPERIOR COURT OF CALIFORNIA, COUNTY OF San Francisco
STREET ADDRESS: 400 McAllister Street
MAILING ADDRESS:
CITY AND ZIP CODE: San Francisco, CA 94102
BRANCH NAME:

CASE NAME:
Salma Aghmane v. Bank of America Corporation, et al.

| CIVIL CASE COVER SHEET | Complex Case Designation | CASE NUMBER: |
|---|---|---|
| [✔] Unlimited  [ ] Limited | [ ] Counter   [ ] Joinder | |
| (Amount demanded exceeds $25,000) | (Amount demanded is $25,000 or less) | Filed with first appearance by defendant (Cal. Rules of Court, rule 3.402) | JUDGE: |
| | | DEPT: |

*Items 1–6 below must be completed (see instructions on page 2).*

1. Check one box below for the case type that best describes this case:

**Auto Tort**
[ ] Auto (22)
[ ] Uninsured motorist (46)

**Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort**
[ ] Asbestos (04)
[ ] Product liability (24)
[ ] Medical malpractice (45)
[ ] Other PI/PD/WD (23)

**Non-PI/PD/WD (Other) Tort**
[ ] Business tort/unfair business practice (07)
[ ] Civil rights (08)
[ ] Defamation (13)
[ ] Fraud (16)
[ ] Intellectual property (19)
[ ] Professional negligence (25)
[ ] Other non-PI/PD/WD tort (35)

**Employment**
[✔] Wrongful termination (36)
[ ] Other employment (15)

**Contract**
[ ] Breach of contract/warranty (06)
[ ] Rule 3.740 collections (09)
[ ] Other collections (09)
[ ] Insurance coverage (18)
[ ] Other contract (37)

**Real Property**
[ ] Eminent domain/Inverse condemnation (14)
[ ] Wrongful eviction (33)
[ ] Other real property (26)

**Unlawful Detainer**
[ ] Commercial (31)
[ ] Residential (32)
[ ] Drugs (38)

**Judicial Review**
[ ] Asset forfeiture (05)
[ ] Petition re: arbitration award (11)
[ ] Writ of mandate (02)
[ ] Other judicial review (39)

**Provisionally Complex Civil Litigation (Cal. Rules of Court, rules 3.400–3.403)**
[ ] Antitrust/Trade regulation (03)
[ ] Construction defect (10)
[ ] Mass tort (40)
[ ] Securities litigation (28)
[ ] Environmental/Toxic tort (30)
[ ] Insurance coverage claims arising from the above listed provisionally complex case types (41)

**Enforcement of Judgment**
[ ] Enforcement of judgment (20)

**Miscellaneous Civil Complaint**
[ ] RICO (27)
[ ] Other complaint (not specified above) (42)

**Miscellaneous Civil Petition**
[ ] Partnership and corporate governance (21)
[ ] Other petition (not specified above) (43)

2. This case [ ] is  [✔] is not  complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
   a. [ ] Large number of separately represented parties
   b. [ ] Extensive motion practice raising difficult or novel issues that will be time-consuming to resolve
   c. [ ] Substantial amount of documentary evidence
   d. [ ] Large number of witnesses
   e. [ ] Coordination with related actions pending in one or more courts in other counties, states, or countries, or in a federal court
   f. [ ] Substantial postjudgment judicial supervision

3. Remedies sought (check all that apply): a. [✔] monetary  b. [ ] nonmonetary; declaratory or injunctive relief  c. [✔] punitive
4. Number of causes of action (specify): 8
5. This case [ ] is  [✔] is not  a class action suit.
6. If there are any known related cases, file and serve a notice of related case. (You may use form CM-015.)

Date: June 27, 2013
Hallie Von Rock
(TYPE OR PRINT NAME)                    (SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

**NOTICE**
- Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
- File this cover sheet in addition to any cover sheet required by local court rule.
- If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on all other parties to the action or proceeding.
- Unless this is a collections case under rule 3.740 or a complex case, this cover sheet will be used for statistical purposes only.

Page 1 of 2

Form Adopted for Mandatory Use
Judicial Council of California
CM-010 [Rev. July 1, 2007]

**CIVIL CASE COVER SHEET**

Cal. Rules of Court, rules 2.30, 3.220, 3.400–3.403, 3.740;
Cal. Standards of Judicial Administration, std. 3.10
www.courtinfo.ca.gov

1 | RANDALL B. AIMAN-SMITH #124599
2 | REED W.L. MARCY #191531
| HALLIE VON ROCK #233152
3 | aiman-smith ⌇ marcy
4 | 7077 oakport street suite 1020
| oakland california 94621
5 | t:510.582.6800 f:510.582.6830
6 | Attorneys for Plaintiff
| Salma Aghmane
7 |
8 | IN THE SUPERIOR COURT OF CALIFORNIA
9 | IN AND FOR THE COUNTY OF SAN FRANCISCO
10 |
11 | SALMA AGHMANE, an individual,
12 | Plaintiff,
13 | vs.
14 | BANK OF AMERICA CORPORATION;
| BANK OF AMERICA N.A.; MERRILL
15 | LYNCH & CO., INC., and DOES One
| through 200,
16 |
17 | Defendants.

**F I L E D**
San Francisco County Superior Court

JUN 27 2013

CLERK OF THE COURT
BY: _____
Deputy Clerk

**BY FAX**

Case No.:

**CGC-13-532473**

**COMPLAINT FOR DAMAGES**

**JURY DEMANDED**

Complaint for Damages
*Aghmane v. Bank of America*                     Case no.

Plaintiff is informed and believes and thereon alleges as follows:

## Preliminary Allegations:
### Parties, Jurisdiction, Venue

1.     Defendant Bank of America Corporation does business in California as a nationally chartered bank engaged in the business of finance and banking. Bank of America Corporation is licensed to do business in California, and does substantial business in the State of California, and in the County of San Francisco.

2.     Defendant Bank of America N.A. is a national full-service commercial bank and primary bank subsidiary of Bank of America Corporation, doing substantial business in the State of California an in the County of San Francisco.

3.     Defendant Merrill Lynch & Co., Inc. is the former parent holding company for Merrill Lynch entities prior to its acquisition by Bank of America Corporation. Merrill Lynch & Co., Inc., a direct subsidiary of Bank of America Corporation, is the holding company for Merrill Lynch subsidiaries and operations.

4.     Hereinafter, Defendants Bank of America Corporation, Bank of America N.A., and Merrill Lynch & Co., Inc. will be referred to as DEFENDANTS and/or BANK OF AMERICA.

5.     Plaintiff Salma Aghmane (hereinafter "plaintiff" or "Aghmane") is and at all times pertinent was a competent, adult, Moroccan female, resident in California. Plaintiff was employed by defendant BANK OF AMERICA as a Business Bank Client Manager/Vice President Client Manager in San Francisco, California.

6.     Plaintiff is currently unaware of the true names and capacities of the defendants sued herein as Does One through 200 and therefore sues them by these fictitious names. Plaintiff will amend this complaint to state their true name and capacities when these have been ascertained. The defendants named herein as Does One through 200 are each in some way responsible for the injuries and damages to plaintiff as alleged herein.

7.     The events described herein concern an employment relationship between plaintiff and defendant, arising in and performed in the State of California, City and County of

1   San Francisco.

2                                      **Preliminary Allegations:**

3                                      **Factual Background**

4       8.    Plaintiff was employed by BANK OF AMERICA as a Business Bank Client

5   Manager/Vice President Client Manager.

6       9.    Plaintiff was initially hired in May 2008 to work in New York by Senior Vice

7   President, Market Executive, Sherry Minda.

8       10.    Plaintiff was successful in her employment and had an excellent working

9   relationship with Ms Minda, and later with her new Manager Tom Carly (who took over Ms

10   Minda's position when Ms Minda transferred to another location), while employed in New

11   York.

12       11.    In September 2009, Plaintiff needed to relocate to California and was offered the

13   position as a Vice President Client Manager in San Francisco.  Plaintiff started working in the

14   San Francisco, California office on October 19, 2009.

15       12.    In her new position in San Francisco, Plaintiff reported to Claudio Cipollina

16   (hereinafter "Cipollina").

17       13.    In the San Francisco office, from approximately mid-2011 through the date of

18   her termination, Plaintiff was the only female in her department.

19       14.    Including locations outside of the San Francisco office, in California, Plaintiff

20   was the only non-white female in her department under Cipollina.

21       15.    Despite plaintiff's success in New York, Cipollina gave plaintiff a substantially

22   inferior portfolio compared to that of her male cohorts.

23       16.    Additionally, plaintiff was not provided leads and new clients in the same

24   manner as that of her male cohorts.

25       17.    Plaintiff also earned less compensation and was not given the same promotional

26   opportunities that her male cohorts received.

27       18.    Thus, during her employment, plaintiff was subject to discrimination in that she

28   was assigned less desirable leads, existing accounts, and transferred accounts, as well as

Complaint for Damages
*Aghmane v. Bank of America*
Page 2
                                     Case no.

1  receiving lower compensation and unequal promotional opportunities, than her similarly-
2  situated male cohorts.

3      19.    Despite plaintiff's complaints to Cipollina about not receiving equal treatment,
4  the inequity continued and Cipollina criticized Plaintiff in a gender-biased manner in her last
5  review before her termination, stating that Plaintiff needs to keep her "emotions in check..."

6      20.    Despite these disadvantages, Plaintiff was able to perform in an exemplary
7  fashion and consistently exceeded her goals. However, plaintiff was not able to earn as much
8  as she would have earned had she not been subjected to the discriminatory practices described
9  herein.

10     21.    Not only was plaintiff's performance excellent in spite of the discrimination to
11  which she was subjected, but plaintiff did no act that would subject her to discipline or that
12  would constitute poor performance sufficient to subject her to discipline or termination.

13     22.    On January 9, 2013, Plaintiff was notified by BANK OF AMERICA that a
14  complaint had allegedly been made by Plaintiff's cousin that Plaintiff had debited funds from
15  her account without authorization. Plaintiff was never shown any written complaint or other
16  document regarding any alleged complaint against her.

17     23.    In response, on that same date, Plaintiff wrote a detailed six page voluntary
18  statement explaining how Plaintiff had advanced money to her cousin while her cousin was in
19  the United States; that after her cousin returned to Morocco, her cousin gave plaintiff her log-in
20  information over the telephone for her BANK OF AMERICA account to transfer the funds
21  owed to plaintiff; that plaintiff made the transfers at home while off-duty; and that plaintiff was
22  fully aware that BANK OF AMERICA tracks every transaction on-line and therefore was not
23  attempting to deceive the BANK OF AMERICA with her transactions.

24     24.    Additionally, Plaintiff provided BANK OF AMERICA with all of the receipts
25  for the money advanced by Plaintiff to her cousin, which equaled the amount transferred from
26  the cousin's account to Plaintiff.

27     25.    Plaintiff believed that a reasonable investigation conducted by BANK OF
28  AMERICA would be performed to confirm that Plaintiff did not violate BANK OF AMERICA

Complaint for Damages
*Aghimnne v. Bank of America*
Page 3

Case no.

1  policies.

2      26.     Instead, after providing her signed statement, Plaintiff was immediately walked
3  out of the BANK OF AMERICA building.

4      27.     Plaintiff e-mailed the supporting documents to BANK OF AMERICA that same
5  day, on January 9, 2013, which shows all of the expenses that Plaintiff advanced to her cousin.

6      28.     Two days later, on January 11, 2013, Cipollina asked Plaintiff to meet him at a
7  restaurant in Novato, California, where he presented Plaintiff with a repayment agreement of
8  $12,800, and asked that she sign or if she did not, Plaintiff would face negative consequences
9  with the BANK OF AMERICA.

10      29.     Fearful that she would be disciplined or terminated from the BANK OF
11  AMERICA if she did not sign the repayment agreement, although she did not believe that she
12  owed anything to BANK OF AMERICA, Plaintiff agreed to sign the repayment agreement.

13      30.     After Plaintiff signed the repayment greement and handed it to Cipollina, he
14  presented Plaintiff with a termination letter along with her final paycheck.

15      31.     BANK OF AMERICA did not reasonably investigate any purported complaints
16  against Plaintiff and then coerced her into signing a repayment agreement before terminating
17  Plaintiff.

18      32.     Plaintiff was due to be paid a significant six-figure bonus, already earned for her
19  performance in 2012, on February 15, 2013.

20      33.     Because Plaintiff was terminated on January 11, 2013, BANK OF AMERICA
21  did not pay plaintiff the bonus due to her.

22      34.     Plaintiff has observed in her career at BANK OF AMERICA that other male
23  cohorts have been paid their bonus when terminated.

24      35.     At the time of plaintiff's termination, she had established, through years of hard
25  work, a very valuable portfolio, which would be given to her male cohorts and her
26  replacement, a white male, after her termination.

27      36.     Plaintiff's replacement, a white male, with less credit experience than Plaintiff,
28  was hired at a higher salary and title than Plaintiff, who had been in the position for several

1   years.

2      37.    Thus, BANK OF AMERICA failed to prevent discrimination against plaintiff

3   and failed to pay plaintiff equally to her male counterparts.

4      38.    Following Plaintiff's termination, BANK OF AMERICA took the affirmative

5   step of contacting Early Warning Services, LLC (hereinafter "EWS"), which is a limited

6   liability company owned by Bank of America Corporation, BB&T, Capital One, JPMorgan

7   Chase and Wells Fargo, that provides consumer reports for the financial industry.

8      39.    On its website, EWS states: "Early Warning is known throughout the financial

9   services industry as a leader in fraud prevention and risk management." Thus, banks run

10   reports on prospective employees through EWS, which purports to warn employers about

11   employees who have been flagged by past employers for engaging in fraudulent activity.

12      40.    BANK OF AMERICA blacklisted Plaintiff on EWS by reporting that Plaintiff

13   had an "Unfavorable Employment Record."

14      41.    It is well-known in the banking industry that an "Unfavorable Employment

15   Record" in EWS will essentially block an employee from future employment.

16      42.    BANK OF AMERICA relied on inaccurate, false information, disputed by

17   Plaintiff, in a malicious manner to publish that plaintiff had an "Unfavorable Employment

18   Record," despite plaintiff's tremendous success in exceeding her goals during her employment

19   at BANK OF AMERICA.

20      43.    As a result of BANK OF AMERICA's inaccurate reporting of Plaintiff as having

21   an "Unfavorable Employment Record" in EWS, Plaintiff's offer of employment with

22   JPMorgan Chase & Co. (hereinafter, "JPMorgan") was rescinded. Specifically, after offering

23   Plaintiff a lucrative position, JPMorgan ran a consumer check with EWS. The only negative

24   information on Plaintiff's consumer report with EWS is from BANK OF AMERICA.

25   Following its check with EWS, JPMorgan wrote to Plaintiff and stated, "Offer of Employment

26   Rescinded - Our decision was based, in whole or in part, on information obtained from the

27   consumer reporting agency listed below...Early Warning Services, LLC"

28      44.    Plaintiff is informed and believes, and thereon alleges that, as part of its

1   investigative process, BANK OF AMERICA has a policy permitting employees under
2   investigation for any wrongdoing to review and contest any allegations or preliminary findings
3   of such conduct so that BANK OF AMERICA could arrive at the truth of the matter, and
4   generally conducted its investigations according to this policy. Plaintiff was never permitted to
5   review any complaint made against her nor did BANK OF AMERICA ever provide Plaintiff
6   with a copy of its preliminary findings. Rather, plaintiff was confronted on January 9, 2013 by
7   BANK OF AMERICA that a complaint had been made, although the specifics of the complaint
8   or any documentation of any alleged complaint were never presented to plaintiff. In an attempt
9   to figure out on her own what the Bank might be referring to, plaintiff wrote a detailed
10   response and provided supporting documents. Plaintiff was not contacted again regarding any
11   investigation until over four months later when Plaintiff was summarily terminated and
12   coerced into signing a repayment agreement for funds Plaintiff claims were legitimately owed
13   and properly paid to her.

14      45.   BANK OF AMERICA's failure to allow Plaintiff to contest the allegations of
15   any complaint, by never showing it to plaintiff, by never presenting any documents of any
16   alleged complaints, by never presenting any evidence to plaintiff of any wrongdoing, and by
17   never presenting any preliminary findings by BANK OF AMERICA, constitutes a purposeful,
18   reckless, and wanton avoidance of the truth, and/or the product of a deliberate decision not to
19   acquire knowledge of facts that might confirm the probable falsity of the subject charges.

20      46.   If BANK OF AMERICA had complied with its own policy of permitting
21   employees to review and adequately contest the allegations and preliminary findings against
22   them, BANK OF AMERICA would have learned that Plaintiff did not engage in any
23   wrongdoing, there was no basis for her termination, and that there was no basis for blacklisting
24   plaintiff as having an "Unfavorable Employment Record" on EWS.

25      47.   BANK OF AMERICA's actions were undertaken as part of its ongoing
26   discriminatory treatment toward Plaintiff. BANK OF AMERICA's purposeful avoidance of
27   the truth and deliberate decision not to acquire facts that would have confirmed the falsity of
28   the subject charges (e.g., by permitting Plaintiff an opportunity to review any alleged

1  complaints and respond to how any such complaint was false) was despicable and was done
2  with a conscious disregard for the consequences of the rights of the Plaintiff to be free from
3  false allegations of having an unfavorable employment record (especially, after consistently
4  exceeding her goals while employed) and the reporting of an unfavorable employment record
5  on a consumer report synonymous with reports for fraud, in the banking industry in a manner
6  in which all banking institutions and any institution which requires trust, honesty, integrity and
7  fidelity as a prerequisite to employment would deny Plaintiff employment.

8      48.    Further, the actions of BANK OF AMERICA were despicable because they were
9  made without foundation and it knew, as a co-owner of EWS, that its report to EWS of
10  plaintiff as having an "Unfavorable Employment Record" would essentially prevent Plaintiff
11  from obtaining work in the financial industry. Additionally, the actions of BANK OF
12  AMERICA constituted material misrepresentations of Plaintiff's employment performance
13  because Plaintiff consistently exceeded her goals (for example in the first half of 2012,
14  Plaintiff had a 134% composite for her goals, which increased even higher by the end of 2012)
15  and had an effort been made to determine the truth of the alleged grounds for the "Unfavorable
16  Employment Record," BANK OF AMERICA would have determined that Plaintiff did not
17  engage in wrongdoing. The purported investigation underlying the grounds for the
18  "Unfavorable Employment Record," did not comply with principles of due process in that
19  Plaintiff was not given an opportunity of what actual complaints had been made against her nor
20  was she given the opportunity to adequately contest the unknown propriety of such charges,
21  thus resulting Plaintiff's employment offer with JPMorgan being rescinded and denying her the
22  ability to find future employment with any financial industry which uses EWS.

23      49.    Plaintiff was not informed of BANK OF AMERICA's preliminary findings and
24  received no information regarding any purported investigation by BANK OF AMERICA.
25  Rather, Plaintiff was coerced into signing a repayment agreement and then summarily
26  terminated.

27      50.    Plaintiff did not learn of BANK OF AMERICA's supposed findings, or of the
28  subsequent publication/republication of its findings, until her employment offer from

1  JPMorgan was rescinded. BANK OF AMERICA never notified plaintiff that it had made a

2  negative report to EWS or that plaintiff had the right to contest BANK OF AMERICA's

3  negative report to EWS.

4      51.    Only after plaintiff received the letter from JPMorgan rescinding her

5  employment offer did plaintiff learn of BANK OF AMERICA's negative report. Plaintiff

6  contacted EWS, which informed plaintiff that BANK OF AMERICA inputs the report code

7  and that EWS was not provided any facts or other information regarding the report.

8      52.    Thereafter, plaintiff requested her personnel file and other employment related

9  documents from BANK OF AMERICA. On May 17, 2013, BANK OF AMERICA provided

10 documents purporting to include "personnel and wage records relating to Ms. Aghmane's

11 employment." Plaintiff reviewed the file upon receiving it. It did not include any documents

12 pertaining to any alleged complaint against plaintiff; any witness statements to substantiate the

13 bank's accusations; any evidence of fraud or wrongdoing by plaintiff; any investigation reports

14 or findings or any investigation materials at all, except for plaintiff's written voluntary

15 statement made on January 9, 2013.

16     53.    Plaintiff is further informed and believes, and thereon alleges, that BANK OF

17 AMERICA did not receive an actual complaint against plaintiff; that if a complaint was made,

18 it was later rescinded or unsubstantiated; or that if a complaint was made, such complaint was

19 false and plaintiff would have been able to prove as much if provided the opportunity to

20 contest the specifics of any such complaint. However, BANK OF AMERICA's actions show

21 that it purposefully avoided seeking the truth of any alleged complaints against Plaintiff and

22 instead, wrongfully terminated plaintiff and blacklisted Plaintiff in the financial industry.

23     54.    Plaintiff, therefore, contends BANK OF AMERICA's termination decision and

24 subsequent report to EWS (and any other potential consumer reporting agency which plaintiff

25 has not been informed about) were based on discrimination and further constitutes malice,

26 fraud and oppression on the part of BANK OF AMERICA.

27 ///

28 ///

First Cause of Action
Violation of Fair Employment and Housing Act
(Government Code Section 12940, *et seq.*)

55.  Plaintiff here realleges all the preceding paragraphs of this complaint as though fully set forth.

56.  The actions of DEFENDANTS, and each of them, as described herein constitute discrimination on the basis of gender, race, and national origin as forbidden by Government Code section 12940 and subparts, including, *inter alia*, subdivisions (a), (c), (i), (j), and (k) and plaintiff is entitled to recover general and special damages therefore.

57.  Plaintiff alleges that she was denied a work environment free of discrimination and/or retaliation, denied equal pay, denied promotion, denied bonuses, wrongfully terminated, and labeled as having an "Unfavorable Employment Record" in BWS.

58.  The acts of DEFENDANTS were done knowingly, willfully, wantonly, oppressively, and maliciously, and plaintiff is entitled to recover punitive and exemplary damages therefor.

59.  As a result of the acts of DEFENDANTS, plaintiff has been forced to hire an attorney and to bring this suit and plaintiff is entitled to recover her attorney's fees.

60.  Plaintiff has exhausted all administrative remedies required by law in that, within the time provided by statute, plaintiff filed a complaint with California's Department of Fair Employment and Housing and has received a "right to sue" letter from said Department.

61.  Accordingly, Plaintiff has been damaged in an amount according to proof and in excess of the jurisdictional minimum of this Court.

**Second Cause of Action
Violation of California Equal Pay Act
(Labor Code Section 1197.5, *et seq.*)**

62.  Plaintiff here realleges all the preceding paragraphs of this complaint as though fully set forth.

63.  No employer shall pay any individual in the employer's employ at wage rates less than the rates paid to employees of the opposite sex in the same establishment for equal work on jobs the performance of which requires equal skill, effort, and responsibility, and

1    which are performed under similar working conditions, except where the payment is made
2    pursuant to a seniority system, a merit system, a system which measures earnings by quantity
3    or quality of production, or a differential based on any bona fide factor other than sex. *See,*
4    Labor Code §1197.5, et seq.

5       64.    Plaintiff alleges that she was denied equal pay, denied promotion which would
6    have resulted in higher wages, and denied bonuses by DEFENDANTS on the basis of her sex.

7       65.    As a result of the acts of DEFENDANTS, and each of them, BANK OF
8    AMERICA is liable to Plaintiff in the amount of the wages, and interest thereon, of which
9    Plaintiff was deprived by reason of the violation, and in an additional equal amount as
10   liquidated damages, together with the costs of bringing this law suit and reasonable attorney's
11   fees.

12      66.    Accordingly, Plaintiff has been damaged in an amount according to proof and in
13   excess of the jurisdictional minimum of this Court.

14                         **Third Cause of Action**
                                **Blacklisting**
15                      **(Labor Code Section 1050, et seq.)**

16      67.    Plaintiff here realleges all paragraphs of this complaint as though fully set forth.

17      68.    Plaintiff was hired to work for BANK OF AMERICA in May 2008 and
18   continued in her employment relationship until she was terminated in January 2013. Plaintiff
19   consistently exceeded her employment goals and received favorable reviews for her work.

20      69.    Plaintiff was terminated on January 11, 2013, and contends that such termination
21   was in violation of the Fair Employment and Housing Act.

22      70.    Subsequent to Plaintiff's termination, BANK OF AMERICA falsely informed
23   EWS that Plaintiff had committed serious violations that caused her to be rated as
24   "Unfavorable Employment Record." As a co-owner of EWS, BANK OF AMERICA knew or
25   should have known that its negative report of Plaintiff would become known to prospective
26   employers, that because Plaintiff had been terminated by BANK OF AMERICA that she
27   would be in need of new employment in the banking industry, and that the result would be
28   plaintiff's preclusion of future employment in the banking industry. In fact, plaintiff's future

1 employer, JPMorgan, rescinded its employment offer after running a consumer check with
2 EWS, in which the only negative report is from BANK OF AMERICA.

3     71.    As a proximate result of BANK OF AMERICA's intentional misrepresentations,
4 Plaintiff has been prevented from obtaining a position in the banking industry comparable to
5 her position at BANK OF AMERICA, causing damage to Plaintiff in an amount to be proved
6 at trial.

7     72.    The reports of BANK OF AMERICA which were ultimately reported by EWS
8 were made and authorized by BANK OF AMERICA to prevent Plaintiff from continuing
9 employment in the banking industry. These reports constitute "black listing" of the Plaintiff in
10 violation of Labor Code sections 1050 through 1054 in that after BANK OF AMERICA
11 discharged Plaintiff from service, BANK OF AMERICA made a misrepresentation that
12 prevents or attempts to prevent Plaintiff from obtaining employment. Plaintiff is effectively
13 barred from employment in the banking industry as to any financial institution utilizing EWS
14 (or any other consumer agency that BANK OF AMERICA has reported negatively to
15 regarding Plaintiff), as has already been demonstrated in her losing a position with JPMorgan,
16 which actions are prohibited by California State Law.

17     73.    As a direct result of such actions, Plaintiff has been damaged by losing a
18 lucrative position with JPMorgan and, therefter, being prevented from employment in the
19 banking industry as to any financial institution utilizing EWS (or any other consumer agency
20 that BANK OF AMERICA has reported negatively to regarding Plaintiff). Pursuant to Labor
21 Code section 1054, Plaintiff is entitled to treble damages as a consequence of the acts of the
22 DEFENDANTS.

23 **Fourth Cause of Action**<br>**Defamation**
24

25     74.    Plaintiff here realleges all paragraphs of this complaint as though fully set forth.

    75.    During and subsequent to Plaintiff's employment with BANK OF AMERICA,
26 DEFENDANTS made statements about Plaintiff of a false and defamatory nature and in a
27 malicious manner, thereby disparaging Plaintiff and preventing Plaintiff from engaging in
28

Complaint for Damages
*Aghtmmus v. Bank of America*
Page 11
                         Case no.

1    employment at JPMorgan and elsewhere.

2        76.    Subsequent to Plaintiff's employment with BANK OF AMERICA,

3    DEFENDANTS caused to be published and/or republished such false and defamatory

4    statements about Plaintiff, thereby causing Plaintiff economic and non-economic damage.

5        77.    DEFENDANTS published the false and defamatory publication to others

6    knowing that subsequent republication to persons interested in the Plaintiff's past employment

7    history was reasonably foreseeable.

8        78.    As set forth and alleged above, these false and defamatory statements include but

9    are not limited to an allegation that Plaintiff had an "Unfavorable Employment Record" while

10   employed by BANK OF AMERICA to EWS, a company "known throughout the financial

11   services industry as a leader in fraud prevention," thus insinuating that Plaintiff had engaged in

12   fraudulent activity while employed by BANK OF AMERICA, in a position of trust dealing

13   with access to personal information regarding customers of BANK OF AMERICA.

14       79.    Each of the defamatory statements made and/or published by DEFENDANTS

15   about Plaintiff was made with express malice, in bad faith, without belief in the truth of the

16   matter published, and/or with reckless disregard of the truth or falsity of the matter stated.

17       80.    Each of these statements harmed Plaintiff's reputation among her clients of

18   BANK OF AMERICA, her former colleagues of BANK OF AMERICA, and in the general

19   business community, and deterred other third parties from associating, dealing, and employing

20   or continuing employment of Plaintiff.

21       81.    Each of the defamatory statements was also defamatory per se because the

22   statements ascribe characteristics to the Plaintiff which are incompatible with the proper

23   conduct of Plaintiff's chosen business and profession. The defamatory statements have injured

24   Plaintiff in her reputation and continue to injure Plaintiff and her reputation among her former

25   colleagues, clients, and in the business community generally.

26       82.    It is reasonably foreseeable that DEFENDANTS' published allegation that

27   Plaintiff had an "Unfavorable Employment Record" would cause Plaintiff damage. As a direct

28   and proximate result of the publication of false and defamatory statements by DEFENDANTS,

1    Plaintiff has suffered and continues to suffer substantial damages.

2        83.    The actions of the DEFENDANTS were willful, wanton, fraudulent, oppressive,

3    and malicious. These acts were authorized and/or ratified by managing agents of BANK OF

4    AMERICA. Moreover, despite Plaintiff contesting the facts underlying that allegedly form the

5    basis of DEFENDANTS' malicious publication on EWS (and potentially other consumer

6    reports that Plaintiff has not yet been made aware of), BANK OF AMERICA still published

7    the defamatory statements, which further constitutes ratification of the actions of corporate

8    agents making the false claims. All of these actions entitle the Plaintiff to recover punitive

9    damages against the DEFENDANTS and each of them.

                          **Fifth Cause of Action**
10                 **Intentional Infliction of Emotional Distress**

11       84.    Plaintiff here realleges all paragraphs of this complaint as though fully set forth.

12       85.    Plaintiff claims that BANK OF AMERICA's conduct caused her to suffer severe

13   emotional distress in that DEFENDANTS' conduct was outrageous and intended to cause

14   Plaintiff emotional distress; or that DEFENDANTS' acted with reckless disregard of the

15   probability that Plaintiff would suffer emotional distress, knowing that Plaintiff was present

16   when the conduct occurred; and that Plaintiff suffered severe emotional distress; and that

17   DEFENDANTS' conduct was a substantial factor in causing Plaintiff's severe emotional

18   distress.

19       86.    As a direct and proximate result of the acts of defendants and each of them as

20   alleged herein, including but not limited to, subjecting Plaintiff to discriminatory treatment

21   during her employment, wrongfully terminating Plaintiff on the basis of discrimination, and/or

22   making false statements about Plaintiff to EWS knowing that such statements would be

23   published, Plaintiff has suffered humiliation, mental anguish, and emotional and physical

24   distress.

25       87.    Furthermore, by reasons of the acts alleged above, Plaintiff has been prevented

26   from attaining a comparable position, Plaintiff was without employment for a substantial

27   period of time, Plaintiff was coerced into a repayment agreement with BANK OF AMERICA

28

1    which she contends she was not obligated to repay but did so only on fear of losing her job
2    with BANK OF AMERICA, Plaintiff was prevented from obtaining a lucrative position with
3    JPMorgan, Plaintiff will be prevented from future employment with any bank or other financial
4    industry that uses EWS (or any other consumer reporting service that BANK OF AMERICA
5    has provided negative and false statements about her employment with BANK OF
6    AMERICA), and will thereby sustain further loss of earnings.

7        88.    Furthermore, by reasons of the acts alleged above, Plaintiff is entitled to an
8    award of punitive damages against the DEFENDANTS.

9                            Sixth Cause of Action
                    Negligent Infliction of Emotional Distress
10
        89.    Plaintiff here realleges all paragraphs of this complaint as though fully set forth.
11
        90.    Plaintiff claims that BANK OF AMERICA's conduct caused her to suffer
12
     serious emotional distress. Plaintiff claims that DEFENDANTS were negligent; Plaintiff
13
     suffered serious emotional distress; and that DEFENDANTS' negligence was a substantial
14
     factor in causing Plaintiffs' serious emotional distress.
15
        91.    During Plaintiff's employment, she was subjected to discriminatory treatment by
16
     BANK OF AMERICA and ultimately wrongfully terminated on these grounds. Furthermore,
17
     subsequent to Plaintiff's termination, DEFENDANTS published false statements about
18
     Plaintiff as having an "Unfavorable Employment Record." To the extent that DEFENDANTS
19
     did not reasonably investigate the motives for Plaintiff's termination and/or did not reasonably
20
     investigate the alleged facts underlying its "Unfavorable Employment Record" rating of
21
     Plaintiff, DEFENDANTS acted negligently.
22
        92.    As a direct and proximate result of the acts of DEFENDANTS and each of them
23
     as alleged herein, and set forth above, plaintiff has suffered serious emotional distress.
24
     Accordingly, Plaintiff has suffered damages according to proof.
25
                            Seventh Cause of Action
26                  Intentional Interference with Economic Advantage

27       93.    Plaintiff here realleges all paragraphs of this complaint as though fully set forth.

28       94.    By doing the acts complained of herein, DEFENDANTS and each of them

1   intentionally interfered with plaintiff's probable prospective employment and the economic

2   advantage that would accrue to Plaintiff's benefit had BANK OF AMERICA not made false

3   statements about Plaintiff to EWS (and any other consumer reporting service that BANK OF

4   AMERICA has provided negative and false statements about her employment with BANK OF

5   AMERICA).

6       95.   In terminating Plaintiff, BANK OF AMERICA had reason to know that Plaintiff

7   would be searching for new employment in the banking and business field, which has been her

8   long term career. Defendants and each of them made false statements that prevents plaintiff

9   from obtaining employment with any bank, financial institution, or other employer who runs a

10   report from EWS (and any other consumer reporting service that BANK OF AMERICA has

11   provided negative and false statements about her employment with BANK OF AMERICA).

12       96.   As a direct and proximate result of the acts of defendants and each of them as

13   alleged herein, plaintiff has suffered damages according to proof.

14                     **Eighth Cause of Action**

            **Negligent Interference with Economic Advantage**

15       97.   Plaintiff here realleges all paragraphs of this complaint as though fully set forth.

16

17       98.   By doing the acts complained of herein, defendants and each of them negligently

  interfered with plaintiff's probable prospective employment and the economic advantage that

18   would accrue to plaintiff's benefit had BANK OF AMERICA not made false statements about

19   Plaintiff to EWS (and any other consumer reporting service that BANK OF AMERICA has

20   provided negative and false statements about her employment with BANK OF AMERICA).

21       99.   In terminating Plaintiff, BANK OF AMERICA had reason to know that Plaintiff

22   would be searching for new employment in the banking and business field, which has been her

23   long term career. Subsequent to Plaintiff's termination, DEFENDANTS published false

24   statements about Plaintiff as having an "Unfavorable Employment Record." To the extent that

25   DEFENDANTS did not reasonably investigate the alleged facts underlying its "Unfavorable

26   Employment Record" rating of Plaintiff, DEFENDANTS acted negligently.

27       100.   As a direct and proximate result of the acts of defendants and each of them as

28

Complaint for Damages
*Aghimme v. Bank of America*
Page 15                          Case no.

1  alleged herein, plaintiff has suffered damages according to proof.

2  Wherefore, plaintiff prays for relief as follows:

3  1. For general and special damages according to proof;

4  2. for interest upon said damages at the maximum rate allowed by statute;

5  3. for liquidated damages;

6  4. for punitive and exemplary damages;

7  5. for attorney's fees as permitted by statute or common law;

8  6. for costs of suit incurred; and

9  7. for such other and further relief as the Court may deem just and proper.

10

11  Dated: June 27, 2013                    alman-smith; marcy

12

13  _____

14  Hallie Von Rock
   Attorneys for Plaintiff Salma Aghmane

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a jury on all causes of action and claims with respect to which she has a right to jury trial.

Dated: June 27, 2013

aiman-smith & marcy

Hallie Von Rock
Attorneys for Plaintiff Salma Aghmane



# Superior Court of California, County of San Francisco
## Alternative Dispute Resolution
## Program Information Package



> The plaintiff must serve a copy of the ADR information package
> on each defendant along with the complaint. (CRC 3.221(c))

## WHAT IS ADR?
Alternative Dispute Resolution (ADR) is the term used to describe the various options available for settling a dispute without a trial. There are many different ADR processes, the most common forms of which are mediation, arbitration and settlement conferences. In ADR, trained, impartial people decide disputes or help parties decide disputes themselves. They can help parties resolve disputes without having to go to court.

## WHY CHOOSE ADR?
"It is the policy of the Superior Court that every noncriminal, nonjuvenile case participate either in an early settlement conference, mediation, arbitration, early neutral evaluation or some other alternative dispute resolution process prior to trial." (Local Rule 4)

ADR can have a number of advantages over traditional litigation:
- **ADR can save time.** A dispute often can be resolved in a matter of months, even weeks, through ADR, while a lawsuit can take years.
- **ADR can save money,** including court costs, attorney fees, and expert fees.
- **ADR encourages participation.** The parties may have more opportunities to tell their story than in court and may have more control over the outcome of the case.
- **ADR is more satisfying.** For all the above reasons, many people participating in ADR have reported a high degree of satisfaction.

## HOW DO I PARTICIPATE IN ADR?
Litigants may elect to participate in ADR at any point in a case. General civil cases may voluntarily enter into the court's ADR programs by any of the following means:
- Filing a Stipulation to ADR: Complete and file the Stipulation form (attached to this packet) at the clerk's office located at 400 McAllister Street, Room 103;
- Indicating your ADR preference on the Case Management Statement (also attached to this packet); or
- Contacting the court's ADR office (see below) or the Bar Association of San Francisco's ADR Services at 415-982-1600 or www.sfbar.org/adr for more information.

**For more information about ADR programs or dispute resolution alternatives, contact:**

Superior Court Alternative Dispute Resolution
400 McAllister Street, Room 103, San Francisco, CA 94102
415-551-3876

*Or, visit the court ADR website at www.sfsuperiorcourt.org*

The San Francisco Superior Court currently offers three ADR programs for general civil matters; each program is described below:

## 1) EARLY SETTLEMENT CONFERENCES

The goal of early settlement is to provide participants an opportunity to reach a mutually acceptable settlement that resolves all or part of a dispute.

**(A) THE BAR ASSOCIATION OF SAN FRANCISCO (BASF) EARLY SETTLEMENT PROGRAM (ESP):** This program, provided in conjunction with the court, pairs parties with a two-member volunteer attorney panel. The panels are comprised of one plaintiff and one defense attorney, each with at least 10 years of trial experience. On occasion, a panelist with extensive experience in both plaintiff and defense roles serves as a sole panelist.

**Operation:** The settlement conference typically occurs 2 to 3 months prior to the trial date. BASF informs the participants of the conference date well in advance and provides the names of the panelists and location of the conference approximately 2 weeks prior to the conference. Panelists provide at **no cost** up to 2 hours of their time at each conference, and many panelists provide additional time at no cost if a settlement is imminent. A conference typically begins with a brief meeting with all parties and their attorneys during which each side presents an initial statement. The panelists then assist the parties in understanding and candidly discussing the strengths and weaknesses of their cases, utilizing private meetings as appropriate. If a case does not settle during the first two hours, parties have the option to hire the panelists to continue the conference.

**Cost:** BASF charges an administrative fee of $250 per party. For information on fees for cases involving multiple parties, please contact BASF. Parties who meet certain eligibility requirements may request a waiver of the fee. For more information, please contact BASF's ESP Coordinator at 415-782-9000 ext. 8717 or visit www.sfbar.org/esp.

**(B) COURT SETTLEMENT CONFERENCE:** Parties may elect to apply to the Presiding Judge's department for a specially-set mandatory settlement conference. See Local Rule 5.0 for further instructions. Upon approval of the Presiding Judge, the court will schedule the conference and assign the case for a settlement conference.

## 2) MEDIATION

Mediation is a voluntary, flexible, and confidential process in which a neutral third party facilitates negotiations. The goal of mediation is to reach a mutually satisfactory agreement, before incurring the expense of going to court, that resolves all or part of a dispute after exploring the interests, needs, and priorities of the parties in light of relevant evidence and the law. A mediator strives to bring the parties to a mutually beneficial settlement of the dispute.

**(A) MEDIATION SERVICES OF THE BAR ASSOCIATION OF SAN FRANCISCO,** in cooperation with the Superior Court, is designed to help civil litigants resolve disputes before they incur substantial costs in litigation. While it is best to utilize the program at the outset of litigation, parties may use the program at any time while a case is pending.

**Operation:** A mediator provides at **no cost** one hour of preparation time and two hours of mediation time. After those three hours, if the case is not resolved, parties have the option to continue the process and pay the mediator at his or her regular hourly rate. BASF pre-screens all mediators based upon strict educational and experience requirements. Parties may select a specific mediator or BASF will help the parties make a selection. The BASF website contains photographs, biographies, and videos of the mediators as well as testimonials to assist with the selection process.

**Cost:** BASF charges an administrative fee of $250 per party. For information on fees for cases involving multiple parties, please contact BASF. The hourly mediator fee beyond the first three hours will vary depending on the mediator selected. Parties who meet certain eligibility requirements may request a waiver of the fee. For more information, please contact BASF's Mediation Coordinator at 415-782-9000 ext. 8787 or visit www.sfbar.org/mediation.

**(B) PRIVATE MEDIATION:** Although not currently a part of the court's ADR program, civil disputes may also be resolved through private mediation. Parties may elect any private mediator or mediation organization of their choice; the selection and coordination of private mediation is the responsibility of the parties. Parties may find mediators and organizations on the Internet. The cost of private mediation will very depending on the mediator selected.

## 3) ARBITRATION

An arbitrator is neutral attorney who presides at a hearing where the parties present evidence through exhibits and testimony. The arbitrator applies the law to the facts of the case and makes an award based upon the merits of the case.

**(A) JUDICIAL ARBITRATION:** When the court orders a case to arbitration it is called "judicial arbitration". The goal of arbitration is to provide parties with an adjudication that is earlier, faster, less formal, and usually less expensive than a trial.

**Operation:** Pursuant to CCP 1141.11 and Local Rule 4, all civil actions in which the amount in controversy is $50,000 or less, and no party seeks equitable relief, shall be ordered to arbitration. (Upon stipulation of all parties, other civil matters may be submitted to judicial arbitration.) A case is ordered to arbitration after the Case Management Conference. An arbitrator is chosen from the court's Arbitration Panel. Arbitrations are generally held between 7 and 9 months after a complaint has been filed. Judicial arbitration is not binding unless all parties agree to be bound by the arbitrator's decision. Any party may request a trial within 30 days after the arbitrator's award has been filed.

Local Rule 4.2 allows for mediation in lieu of judicial arbitration, so long as the parties file a stipulation to mediate after the filing of a complaint. If settlement is not reached through mediation, a case proceeds to trial as scheduled.

**Cost:** There is no cost to the parties for judicial arbitration.

**(B) PRIVATE ARBITRATION:** Although not currently a part of the court's ADR program, civil disputes may also be resolved through private arbitration. Here, the parties voluntarily consent to arbitration. If all parties agree, private arbitration may be binding and the parties give up the right to judicial review of the arbitrator's decision. In private arbitration, the parties select a private arbitrator and are responsible for paying the arbitrator's fees.

# EXHIBIT C

 CT Corporation

**TO:**     Michael Bury (BAC), AVP Litigation Specialist
Bank of America
222 Broadway
New York, NY 10038

**RE:**     **Process Served in California**

**FOR:**    Merrill Lynch & Co. (Assumed Name) (Domestic State: DE)
Merrill Lynch, Pierce, Fenner & Smith Incorporated (True Name)

**ENCLOSED ARE COPIES OF LEGAL PROCESS RECEIVED BY THE STATUTORY AGENT OF THE ABOVE COMPANY AS FOLLOWS:**

| | |
|---|---|
| **TITLE OF ACTION:** | Salma Aghmane, etc., Pltf. vs. Bank of America Corporation, et al. including Merrill Lynch & Co., Inc., Dfts. <br> *Name discrepancy noted.* |
| **DOCUMENT(S) SERVED:** | Summons, Notice, Cover Sheet, Complaint, Demand for Jury Trial, ADR Packets |
| **COURT/AGENCY:** | San Francisco County - Superior Court - San Francisco, CA <br> Case # CGC13532473 |
| **NATURE OF ACTION:** | Employee Litigation - Discrimination - Wrongful termination on the basis of gender, race and national origin |
| **ON WHOM PROCESS WAS SERVED:** | C T Corporation System, Los Angeles, CA |
| **DATE AND HOUR OF SERVICE:** | By Process Server on 07/11/2013 at 17:57 |
| **JURISDICTION SERVED :** | California |
| **APPEARANCE OR ANSWER DUE:** | Within 30 days after service - File written response // November 27, 2013 at 10:30 a.m. - Case Management Conference // No later than 15 days before the date set for Case Management Review/Conference - File and Serve Case Management Statement |
| **ATTORNEY(S) / SENDER(S):** | Randall B. Aiman-Smith <br> Aiman-Smith & Marcy PC <br> 7677 Oakport Street, Suite 1020 <br> Oakland, CA 94621 <br> 510-562-6800 |
| **ACTION ITEMS:** | SOP Papers with Transmittal, via  Fed Ex 2 Day , 796213005584 <br> Image SOP <br> Email Notification, Anitria Walker-Doe anitria_walker-doe@ml.com <br> Email Notification, Amy Haas amy.haas@ml.com <br> Email Notification, Mark Borowski mark.f.borowski@bankofamerica.com <br> Email Notification, Michael Bury (BAS & BAIC) mike.bury@bankofamerica.com |
| **SIGNED:** <br> **PER:** <br> **ADDRESS:** <br><br> **TELEPHONE:** | C T Corporation System <br> Nancy Flores <br> 818 West Seventh Street <br> Los Angeles, CA 90017 <br> 213-337-4615 |

Information displayed on this transmittal is for CT Corporation's
record keeping purposes only and is provided to the recipient for
quick reference. This information does not constitute a legal
opinion as to the nature of action, the amount of damages, the
answer date, or any information contained in the documents
themselves. Recipient is responsible for interpreting said
documents and for taking appropriate action. Signatures on
certified mail receipts confirm receipt of package only, not
contents.



7/11 @3:38P

# SUMMONS
### (CITACION JUDICIAL)

FOR COURT USE ONLY
(SOLO PARA USO DE LA CORTE)

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*
BANK OF AMERICA CORPORATION; BANK OF AMERICA N.A.;
MERRILL LYNCH & CO., INC., and DOES One through 200

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*
SALMA AGHMANE, an individual

NOTICE! You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (www.lawhelpcalifornia.org), the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), or by contacting your local court or county bar association. NOTE: The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.

*¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.*

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.*

The name and address of the court is:
*(El nombre y dirección de la corte es):* San Francisco County Superior Court

**CASE NUMBER:**
*(Número del Caso):* C G C 3 - 5 3 2 4 7 3

400 McAllister Street
San Francisco, CA 94102

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
Randall Aiman-Smith, Aiman-Smith & Marcy, 7677 Oakport St. #1020, Oakland, CA 94621, (510) 562-6800

DATE: June 27, 2013          CLERK OF THE COURT          Clerk, by _KEITH D. TOM_, Deputy
*(Fecha)*          *(Secretario)*          *(Adjunto)*

BY FAX

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)*
*(Para prueba de entrega de esta citación use el formulario Proof of Service of Summons, (POS-010).*

**NOTICE TO THE PERSON SERVED:** You are served
1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of (specify):

3. ☒ on behalf of (specify): Merrill Lynch & Co., Inc.

   under: ☒ CCP 416.10 (corporation)          ☐ CCP 416.60 (minor)
          ☐ CCP 416.20 (defunct corporation)    ☐ CCP 416.70 (conservatee)
          ☐ CCP 416.40 (association or partnership) ☐ CCP 416.90 (authorized person)
          ☐ other (specify):
4. ☐ by personal delivery on (date):

Page 1 of 1

Form Adopted for Mandatory Use
Judicial Council of California
SUM-100 [Rev. July 1, 2009]

**SUMMONS**

Code of Civil Procedure §§ 412.20, 465
www.courtinfo.ca.gov

CASE NUMBER: CGC-13-532473  SALMA AGHMANE VS. BANK OF AMERICA CORPORATION

## NOTICE TO PLAINTIFF

A Case Management Conference is set for:

DATE:    NOV-27-2013

TIME:    10:30AM

PLACE:   Department 610
         400 McAllister Street
         San Francisco, CA 94102-3680

All parties must appear and comply with Local Rule 3.

CRC 3.725 requires the filing and service of a case management statement form CM-110 no later than 15 days before the case management conference.

However, it would facilitate the issuance of a case management order without an appearance
statement is filed, served and lodged in Department 610
twenty-five (25) days before the case management

Plaintiff must serve a copy of this notice upon each party to this action with the summons and complaint. Proof of service subsequently filed with this court shall so state.

### ALTERNATIVE DISPUTE RESOLUTION POLICY REQUIREMENTS

IT IS THE POLICY OF THE SUPERIOR COURT THAT EVERY CIVIL CASE PARTICIPATE IN EITHER MEDIATION, JUDICIAL OR NON-JUDICIAL ARBITRATION, THE EARLY SETTLEMENT PROGRAM OR SOME SUITABLE FORM OF ALTERNATIVE DISPUTE RESOLUTION PRIOR TO A TRIAL.
(SEE LOCAL RULE 4)

Plaintiff must serve a copy of the Alternative Dispute Resolution Information Package on each defendant along with the complaint. All counsel must discuss ADR with clients and opposing counsel and provide clients with a copy of the Alternative Dispute Resolution Information Package prior to filing the Case Management Statement.

[DEFENDANTS: Attending the Case Management Conference does not take the place of filing a written response to the complaint. You must file a written response with the court within the time limit required by law. See Summons.]

Superior Court Alternative Dispute Resolution Coordinator
400 McAllister Street, Room 103
San Francisco, CA 94102
(415) 551-3876

See Local Rules 3.3, 6.0 C and 10 B re stipulation to Judge pro tem.

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address):* | FOR COURT USE ONLY |
|---|---|
| Randall B. Aiman-Smith (#124599), Hallie Von Rock (#233152)<br>Aiman-Smith & Marcy PC<br>7677 Oakport Street, Suite 1020<br>Oakland, CA 94621<br>TELEPHONE NO: (510) 562-6800    FAX NO: (510) 562-6830<br>ATTORNEY FOR *(Name):* Plaintiff Salma Aghmane | |

| SUPERIOR COURT OF CALIFORNIA, COUNTY OF  San Francisco |
|---|
| STREET ADDRESS: 400 McAllister Street |
| MAILING ADDRESS: |
| CITY AND ZIP CODE: San Francisco, CA 94102 |
| BRANCH NAME: |

| CASE NAME:<br>Salma Aghmane v. Bank of America Corporation, et al. | |
|---|---|

| **CIVIL CASE COVER SHEET** | **Complex Case Designation** | CASE NUMBER: |
|---|---|---|
| ☑ Unlimited    ☐ Limited<br>(Amount         (Amount<br>demanded      demanded is<br>exceeds $25,000)   $25,000 or less) | ☐ Counter    ☐ Joinder<br><br>Filed with first appearance by defendant<br>(Cal. Rules of Court, rule 3.402) | JUDGE:<br><br>DEPT: |

*Items 1–6 below must be completed (see instructions on page 2).*

1. Check one box below for the case type that best describes this case:

| **Auto Tort** | **Contract** | **Provisionally Complex Civil Litigation** |
|---|---|---|
| ☐ Auto (22) | ☐ Breach of contract/warranty (06) | (Cal. Rules of Court, rules 3.400–3.403) |
| ☐ Uninsured motorist (46) | ☐ Rule 3.740 collections (09) | ☐ Antitrust/Trade regulation (03) |
| **Other PI/PD/WD (Personal Injury/Property** | ☐ Other collections (09) | ☐ Construction defect (10) |
| **Damage/Wrongful Death) Tort** | ☐ Insurance coverage (18) | ☐ Mass tort (40) |
| ☐ Asbestos (04) | ☐ Other contract (37) | ☐ Securities litigation (28) |
| ☐ Product liability (24) | **Real Property** | ☐ Environmental/Toxic tort (30) |
| ☐ Medical malpractice (45) | ☐ Eminent domain/Inverse | ☐ Insurance coverage claims arising from the |
| ☐ Other PI/PD/WD (23) |    condemnation (14) |    above listed provisionally complex case |
| **Non-PI/PD/WD (Other) Tort** | ☐ Wrongful eviction (33) |    types (41) |
| ☐ Business tort/unfair business practice (07) | ☐ Other real property (26) | **Enforcement of Judgment** |
| ☐ Civil rights (08) | **Unlawful Detainer** | ☐ Enforcement of judgment (20) |
| ☐ Defamation (13) | ☐ Commercial (31) | **Miscellaneous Civil Complaint** |
| ☐ Fraud (16) | ☐ Residential (32) | ☐ RICO (27) |
| ☐ Intellectual property (19) | ☐ Drugs (38) | ☐ Other complaint *(not specified above)* (42) |
| ☐ Professional negligence (25) | **Judicial Review** | **Miscellaneous Civil Petition** |
| ☐ Other non-PI/PD/WD tort (35) | ☐ Asset forfeiture (05) | ☐ Partnership and corporate governance (21) |
| **Employment** | ☐ Petition re: arbitration award (11) | ☐ Other petition *(not specified above)* (43) |
| ☑ Wrongful termination (36) | ☐ Writ of mandate (02) | |
| ☐ Other employment (15) | ☐ Other judicial review (39) | |

2. This case ☐ is   ☑ is not   complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
   a. ☐ Large number of separately represented parties    d. ☐ Large number of witnesses
   b. ☐ Extensive motion practice raising difficult or novel   e. ☐ Coordination with related actions pending in one or more courts
        issues that will be time-consuming to resolve            in other counties, states, or countries, or in a federal court
   c. ☐ Substantial amount of documentary evidence    f. ☐ Substantial postjudgment judicial supervision

3. Remedies sought *(check all that apply):* a. ☑ monetary   b. ☐ nonmonetary; declaratory or injunctive relief   c. ☑ punitive
4. Number of causes of action *(specify):*  8
5. This case ☐ is   ☑ is not   a class action suit. *(You may use form CM-015.)*
6. If there are any known related cases, file and serve a notice of related case. *(You may use form CM-015.)*

Date: June 27, 2013

Hallie Von Rock
_____
(TYPE OR PRINT NAME)

▶ *(signature)* Von Rock
_____
(SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

**NOTICE**
- Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
- File this cover sheet in addition to any cover sheet required by local court rule.
- If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on all other parties to the action or proceeding.
- Unless this is a collections case under rule 3.740 or a complex case, this cover sheet will be used for statistical purposes only.

Form Adopted for Mandatory Use<br>Judicial Council of California<br>CM-010 [Rev. July 1, 2007]

**CIVIL CASE COVER SHEET**

Cal. Rules of Court, rules 2.30, 3.220, 3.400–3.403, 3.740;<br>Cal. Standards of Judicial Administration, std. 3.10<br>www.courtinfo.ca.gov

1  RANDALL B. AIMAN-SMITH #124599
   REED W.L. MARCY #191531
2  HALLIE VON ROCK #233152

3  aiman-smith / marcy

4  7077 oakport street suite 1020
   oakland    california    94621
5  t:510.562.6800  f:510.562.6830

6  Attorneys for Plaintiff
   Salma Aghmane
7

**FILED**

JUN 27 2013

CLERK OF THE COURT
BY: _____
              Deputy Clerk

8              IN THE SUPERIOR COURT OF CALIFORNIA

9            IN AND FOR THE COUNTY OF SAN FRANCISCO

10

11  SALMA AGHMANE, an individual,        Case No.:

12            Plaintiff,          **CGC-13-532473**

13       vs.                       **COMPLAINT FOR DAMAGES**

14  BANK OF AMERICA CORPORATION;   **JURY DEMANDED**
    BANK OF AMERICA N.A.; MERRILL
15  LYNCH & CO., INC., and DOES One
    through 200,
16
              Defendants.
17
                                   **BY FAX**
18

19

20

21

22

23

24

25

26

27

28

Complaint for Damages
Aghmane v. Bank of America        Case no.

Plaintiff is informed and believes and thereon alleges as follows:

### Preliminary Allegations:
### Parties, Jurisdiction, Venue

1. Defendant Bank of America Corporation does business in California as a nationally chartered bank engaged in the business of finance and banking. Bank of America Corporation is licensed to do business in California, and does substantial business in the State of California, and in the County of San Francisco.

2. Defendant Bank of America N.A. is a national full-service commercial bank and primary bank subsidiary of Bank of America Corporation, doing substantial business in the State of California an in the County of San Francisco.

3. Defendant Merrill Lynch & Co., Inc. is the former parent holding company for Merrill Lynch entities prior to its acquisition by Bank of America Corporation. Merrill Lynch & Co., Inc., a direct subsidiary of Bank of America Corporation, is the holding company for Merrill Lynch subsidiaries and operations.

4. Hereinafter, Defendants Bank of America Corporation, Bank of America N.A., and Merrill Lynch & Co., Inc. will be referred to as DEFENDANTS and/or BANK OF AMERICA.

5. Plaintiff Salma Aghmane (hereinafter "plaintiff" or "Aghmane") is and at all times pertinent was a competent, adult, Moroccan female, resident in California. Plaintiff was employed by defendant BANK OF AMERICA as a Business Bank Client Manager/Vice President Client Manager in San Francisco, California.

6. Plaintiff is currently unaware of the true names and capacities of the defendants sued herein as Does One through 200 and therefore sues them by these fictitious names. Plaintiff will amend this complaint to state their true name and capacities when these have been ascertained. The defendants named herein as Does One through 200 are each in some way responsible for the injuries and damages to plaintiff as alleged herein.

7. The events described herein concern an employment relationship between plaintiff and defendant, arising in and performed in the State of California, City and County of

San Francisco.

**Preliminary Allegations:**
**Factual Background**

8.   Plaintiff was employed by BANK OF AMERICA as a Business Bank Client Manager/Vice President Client Manager.

9.   Plaintiff was initially hired in May 2008 to work in New York by Senior Vice President, Market Executive, Sherry Minda.

10.   Plaintiff was successful in her employment and had an excellent working relationship with Ms Minda, and later with her new Manager Tom Carly (who took over Ms Minda's position when Ms Minda transferred to another location), while employed in New York.

11.   In September 2009, Plaintiff needed to relocate to California and was offered the position as a Vice President Client Manager in San Francisco. Plaintiff started working in the San Francisco, California office on October 19, 2009.

12.   In her new position in San Francisco, Plaintiff reported to Claudio Cipollina (hereinafter "Cipollina").

13.   In the San Francisco office, from approximately mid-2011 through the date of her termination, Plaintiff was the only female in her department.

14.   Including locations outside of the San Francisco office, in California, Plaintiff was the only non-white female in her department under Cipollina.

15.   Despite plaintiff's success in New York, Cipollina gave plaintiff a substantially inferior portfolio compared to that of her male cohorts.

16.   Additionally, plaintiff was not provided leads and new clients in the same manner as that of her male cohorts.

17.   Plaintiff also earned less compensation and was not given the same promotional opportunities that her male cohorts received.

18.   Thus, during her employment, plaintiff was subject to discrimination in that she was assigned less desirable leads, existing accounts, and transferred accounts, as well as

1   receiving lower compensation and unequal promotional opportunities, than her similarly-
2   situated male cohorts.

3      19.   Despite plaintiff's complaints to Cipollina about not receiving equal treatment,
4   the inequity continued and Cipollina criticized Plaintiff in a gender-biased manner in her last
5   review before her termination, stating that Plaintiff needs to keep her "emotions in check..."

6      20.   Despite these disadvantages, Plaintiff was able to perform in an exemplary
7   fashion and consistently exceeded her goals. However, plaintiff was not able to earn as much
8   as she would have earned had she not been subjected to the discriminatory practices described
9   herein.

10      21.   Not only was plaintiff's performance excellent in spite of the discrimination to
11   which she was subjected, but plaintiff did no act that would subject her to discipline or that
12   would constitute poor performance sufficient to subject her to discipline or termination.

13      22.   On January 9, 2013, Plaintiff was notified by BANK OF AMERICA that a
14   complaint had allegedly been made by Plaintiff's cousin that Plaintiff had debited funds from
15   her account without authorization. Plaintiff was never shown any written complaint or other
16   document regarding any alleged complaint against her.

17      23.   In response, on that same date, Plaintiff wrote a detailed six page voluntary
18   statement explaining how Plaintiff had advanced money to her cousin while her cousin was in
19   the United States; that after her cousin returned to Morocco, her cousin gave plaintiff her log-in
20   information over the telephone for her BANK OF AMERICA account to transfer the funds
21   owed to plaintiff; that plaintiff made the transfers at home while off-duty; and that plaintiff was
22   fully aware that BANK OF AMERICA tracks every transaction on-line and therefore was not
23   attempting to deceive the BANK OF AMERICA with her transactions.

24      24.   Additionally, Plaintiff provided BANK OF AMERICA with all of the receipts
25   for the money advanced by Plaintiff to her cousin, which equaled the amount transferred from
26   the cousin's account to Plaintiff.

27      25.   Plaintiff believed that a reasonable investigation conducted by BANK OF
28   AMERICA would be performed to confirm that Plaintiff did not violate BANK OF AMERICA

Complaint for Damages
*Aghmmia v. Bank of America*
Page 3                Case no.

1 policies.

2     26.    Instead, after providing her signed statement, Plaintiff was immediately walked

3 out of the BANK OF AMERICA building.

4     27.    Plaintiff e-mailed the supporting documents to BANK OF AMERICA that same

5 day, on January 9, 2013, which shows all of the expenses that Plaintiff advanced to her cousin.

6     28.    Two days later, on January 11, 2013, Cipollina asked Plaintiff to meet him at a

7 restaurant in Novato, California, where he presented Plaintiff with a repayment agreement of

8 $12,800, and asked that she sign or if she did not, Plaintiff would face negative consequences

9 with the BANK OF AMERICA.

10     29.    Fearful that she would be disciplined or terminated from the BANK OF

11 AMERICA if she did not sign the repayment agreement, although she did not believe that she

12 owed anything to BANK OF AMERICA, Plaintiff agreed to sign the repayment agreement.

13     30.    After Plaintiff signed the repayment greement and handed it to Cipollina, he

14 presented Plaintiff with a termination letter along with her final paycheck.

15     31.    BANK OF AMERICA did not reasonably investigate any purported complaints

16 against Plaintiff and then coerced her into signing a repayment agreement before terminating

17 Plaintiff.

18     32.    Plaintiff was due to be paid a significant six-figure bonus, already earned for her

19 performance in 2012, on February 15, 2013.

20     33.    Because Plaintiff was terminated on January 11, 2013, BANK OF AMERICA

21 did not pay plaintiff the bonus due to her.

22     34.    Plaintiff has observed in her career at BANK OF AMERICA that other male

23 cohorts have been paid their bonus when terminated.

24     35.    At the time of plaintiff's termination, she had established, through years of hard

25 work, a very valuable portfolio, which would be given to her male cohorts and her

26 replacement, a white male, after her termination.

27     36.    Plaintiff's replacement, a white male, with less credit experience than Plaintiff,

28 was hired at a higher salary and title than Plaintiff, who had been in the position for several

1  years.

2      37.    Thus, BANK OF AMERICA failed to prevent discrimination against plaintiff
3  and failed to pay plaintiff equally to her male counterparts.

4      38.    Following Plaintiff's termination, BANK OF AMERICA took the affirmative
5  step of contacting Early Warning Services, LLC (hereinafter "EWS"), which is a limited
6  liability company owned by Bank of America Corporation, BB&T, Capital One, JPMorgan
7  Chase and Wells Fargo, that provides consumer reports for the financial industry.

8      39.    · On its website, EWS states: "Early Warning is known throughout the financial
9  services Industry as a leader in fraud prevention and risk management." Thus, banks run
10 reports on prospective employees through EWS, which purports to warn employers about
11 employees who have been flagged by past employers for engaging in fraudulent activity.

12     40.    BANK OF AMERICA blacklisted Plaintiff on EWS by reporting that Plaintiff
13 had an "Unfavorable Employment Record."

14     41.    It is well-known in the banking industry that an "Unfavorable Employment
15 Record" in EWS will essentially block an employee from future employment.

16     42.    BANK OF AMERICA relied on inaccurate, false information, disputed by
17 Plaintiff, in a malicious manner to publish that plaintiff had an "Unfavorable Employment
18 Record," despite plaintiff's tremendous success in exceeding her goals during her employment
19 at BANK OF AMERICA.

20     43.    As a result of BANK OF AMERICA's inaccurate reporting of Plaintiff as having
21 an "Unfavorable Employment Record" in EWS, Plaintiff's offer of employment with
22 JPMorgan Chase & Co. (hereinafter, "JPMorgan") was rescinded. Specifically, after offering
23 Plaintiff a lucrative position, JPMorgan ran a consumer check with EWS. The only negative
24 information on Plaintiff's consumer report with EWS is from BANK OF AMERICA.
25 Following its check with EWS, JPMorgan wrote to Plaintiff and stated, "Offer of Employment
26 Rescinded - Our decision was based, in whole or in part, on information obtained from the
27 consumer reporting agency listed below...Early Warning Services, LLC"

28     44.    Plaintiff is informed and believes, and thereon alleges that, as part of its

Complaint for Damages
*Aghinnue v. Bank of America*
Page 5                                   Case no.

1  investigative process, BANK OF AMERICA has a policy permitting employees under
2  investigation for any wrongdoing to review and contest any allegations or preliminary findings
3  of such conduct so that BANK OF AMERICA could arrive at the truth of the matter, and
4  generally conducted its investigations according to this policy. Plaintiff was never permitted to
5  review any complaint made against her nor did BANK OF AMERICA ever provide Plaintiff
6  with a copy of its preliminary findings. Rather, plaintiff was confronted on January 9, 2013 by
7  BANK OF AMERICA that a complaint had been made, although the specifics of the complaint
8  or any documentation of any alleged complaint were never presented to plaintiff. In an attempt
9  to figure out on her own what the Bank might be referring to, plaintiff wrote a detailed
10  response and provided supporting documents. Plaintiff was not contacted again regarding any
11  investigation until over four months later when Plaintiff was summarily terminated and
12  coerced into signing a repayment agreement for funds Plaintiff claims were legitimately owed
13  and properly paid to her.

14       45.     BANK OF AMERICA's failure to allow Plaintiff to contest the allegations of
15  any complaint, by never showing it to plaintiff, by never presenting any documents of any
16  alleged complaints, by never presenting any evidence to plaintiff of any wrongdoing, and by
17  never presenting any preliminary findings by BANK OF AMERICA, constitutes a purposeful,
18  reckless, and wanton avoidance of the truth, and/or the product of a deliberate decision not to
19  acquire knowledge of facts that might confirm the probable falsity of the subject charges.

20       46.     If BANK OF AMERICA had complied with its own policy of permitting
21  employees to review and adequately contest the allegations and preliminary findings against
22  them, BANK OF AMERICA would have learned that Plaintiff did not engage in any
23  wrongdoing, there was no basis for her termination, and that there was no basis for blacklisting
24  plaintiff as having an "Unfavorable Employment Record" on EWS.

25       47.     BANK OF AMERICA's actions were undertaken as part of its ongoing
26  discriminatory treatment toward Plaintiff. BANK OF AMERICA's purposeful avoidance of
27  the truth and deliberate decision not to acquire facts that would have confirmed the falsity of
28  the subject charges (e.g., by permitting Plaintiff an opportunity to review any alleged

1 complaints and respond to how any such complaint was false) was despicable and was done
2 with a conscious disregard for the consequences of the rights of the Plaintiff to be free from
3 false allegations of having an unfavorable employment record (especially, after consistently
4 exceeding her goals while employed) and the reporting of an unfavorable employment record
5 on a consumer report synonymous with reports for fraud, in the banking industry in a manner
6 in which all banking institutions and any institution which requires trust, honesty, integrity and
7 fidelity as a prerequisite to employment would deny Plaintiff employment.

8     48. Further, the actions of BANK OF AMERICA were despicable because they were
9 made without foundation and it knew, as a co-owner of EWS, that its report to EWS of
10 plaintiff as having an "Unfavorable Employment Record" would essentially prevent Plaintiff
11 from obtaining work in the financial industry. Additionally, the actions of BANK OF
12 AMERICA constituted material misrepresentations of Plaintiff's employment performance
13 because Plaintiff consistently exceeded her goals (for example in the first half of 2012,
14 Plaintiff had a 134% composite for her goals, which increased even higher by the end of 2012)
15 and had an effort been made to determine the truth of the alleged grounds for the "Unfavorable
16 Employment Record," BANK OF AMERICA would have determined that Plaintiff did not
17 engage in wrongdoing. The purported investigation underlying the grounds for the
18 "Unfavorable Employment Record," did not comply with principles of due process in that
19 Plaintiff was not given an opportunity of what actual complaints had been made against her nor
20 was she given the opportunity to adequately contest the unknown propriety of such charges,
21 thus resulting Plaintiff's employment offer with JPMorgan being rescinded and denying her the
22 ability to find future employment with any financial industry which uses EWS.

23     49. Plaintiff was not informed of BANK OF AMERICA's preliminary findings and
24 received no information regarding any purported investigation by BANK OF AMERICA.
25 Rather, Plaintiff was coerced into signing a repayment agreement and then summarily
26 terminated.

27     50. Plaintiff did not learn of BANK OF AMERICA's supposed findings, or of the
28 subsequent publication/republication of its findings, until her employment offer from

1  JPMorgan was rescinded. BANK OF AMERICA never notified plaintiff that it had made a
2  negative report to EWS or that plaintiff had the right to contest BANK OF AMERICA's
3  negative report to EWS.

4      51.    Only after plaintiff received the letter from JPMorgan rescinding her
5  employment offer did plaintiff learn of BANK OF AMERICA's negative report. Plaintiff
6  contacted EWS, which informed plaintiff that BANK OF AMERICA inputs the report code
7  and that EWS was not provided any facts or other information regarding the report.

8      52.    Thereafter, plaintiff requested her personnel file and other employment related
9  documents from BANK OF AMERICA. On May 17, 2013, BANK OF AMERICA provided
10 documents purporting to include "personnel and wage records relating to Ms. Aghmane's
11 employment." Plaintiff reviewed the file upon receiving it. It did not include any documents
12 pertaining to any alleged complaint against plaintiff; any witness statements to substantiate the
13 bank's accusations; any evidence of fraud or wrongdoing by plaintiff; any investigation reports
14 or findings or any investigation materials at all, except for plaintiff's written voluntary
15 statement made on January 9, 2013.

16     53.    Plaintiff is further informed and believes, and thereon alleges, that BANK OF
17 AMERICA did not receive an actual complaint against plaintiff; that if a complaint was made,
18 it was later rescinded or unsubstantiated; or that if a complaint was made, such complaint was
19 false and plaintiff would have been able to prove as much if provided the opportunity to
20 contest the specifics of any such complaint. However, BANK OF AMERICA's actions show
21 that it purposefully avoided seeking the truth of any alleged complaints against Plaintiff and
22 instead, wrongfully terminated plaintiff and blacklisted Plaintiff in the financial industry.

23     54.    Plaintiff, therefore, contends BANK OF AMERICA's termination decision and
24 subsequent report to EWS (and any other potential consumer reporting agency which plaintiff
25 has not been informed about) were based on discrimination and further constitutes malice,
26 fraud and oppression on the part of BANK OF AMERICA.

27 ///
28 ///

**First Cause of Action**
**Violation of Fair Employment and Housing Act**
**(Government Code Section 12940, et seq.)**

55. Plaintiff here realleges all the preceding paragraphs of this complaint as though fully set forth.

56. The actions of DEFENDANTS, and each of them, as described herein constitute discrimination on the basis of gender, race, and national origin as forbidden by Government Code section 12940 and subparts, including, *inter alia*, subdivisions (a), (c), (i), (j), and (k) and plaintiff is entitled to recover general and special damages therefore.

57. Plaintiff alleges that she was denied a work environment free of discrimination and/or retaliation, denied equal pay, denied promotion, denied bonuses, wrongfully terminated, and labeled as having an "Unfavorable Employment Record" in EWS.

58. The acts of DEFENDANTS were done knowingly, willfully, wantonly, oppressively, and maliciously, and plaintiff is entitled to recover punitive and exemplary damages therefor.

59. As a result of the acts of DEFENDANTS, plaintiff has been forced to hire an attorney and to bring this suit and plaintiff is entitled to recover her attorney's fees.

60. Plaintiff has exhausted all administrative remedies required by law in that, within the time provided by statute, plaintiff filed a complaint with California's Department of Fair Employment and Housing and has received a "right to sue" letter from said Department.

61. Accordingly, Plaintiff has been damaged in an amount according to proof and in excess of the jurisdictional minimum of this Court.

**Second Cause of Action**
**Violation of California Equal Pay Act**
**(Labor Code Section 1197.5, et seq.)**

62. Plaintiff here realleges all the preceding paragraphs of this complaint as though fully set forth.

63. No employer shall pay any individual in the employer's employ at wage rates less than the rates paid to employees of the opposite sex in the same establishment for equal work on jobs the performance of which requires equal skill, effort, and responsibility, and

which are performed under similar working conditions, except where the payment is made
pursuant to a seniority system, a merit system, a system which measures earnings by quantity
or quality of production, or a differential based on any bona fide factor other than sex. *See,*
Labor Code §1197.5, et seq.

64.    Plaintiff alleges that she was denied equal pay, denied promotion which would
have resulted in higher wages, and denied bonuses by DEFENDANTS on the basis of her sex.

65.    As a result of the acts of DEFENDANTS, and each of them, BANK OF
AMERICA is liable to Plaintiff in the amount of the wages, and interest thereon, of which
Plaintiff was deprived by reason of the violation, and in an additional equal amount as
liquidated damages, together with the costs of bringing this law suit and reasonable attorney's
fees.

66.    Accordingly, Plaintiff has been damaged in an amount according to proof and in
excess of the jurisdictional minimum of this Court.

Third Cause of Action<br>Blacklisting<br>(Labor Code Section 1050, et seq.)

67.    Plaintiff here realleges all paragraphs of this complaint as though fully set forth.

68.    Plaintiff was hired to work for BANK OF AMERICA in May 2008 and
continued in her employment relationship until she was terminated in January 2013. Plaintiff
consistently exceeded her employment goals and received favorable reviews for her work.

69.    Plaintiff was terminated on January 11, 2013, and contends that such termination
was in violation of the Fair Employment and Housing Act.

70.    Subsequent to Plaintiff's termination, BANK OF AMERICA falsely informed
EWS that Plaintiff had committed serious violations that caused her to be rated as
"Unfavorable Employment Record." As a co-owner of EWS, BANK OF AMERICA knew or
should have known that its negative report of Plaintiff would become known to prospective
employers, that because Plaintiff had been terminated by BANK OF AMERICA that she
would be in need of new employment in the banking industry, and that the result would be
plaintiff's preclusion of future employment in the banking industry.  In fact, plaintiff's future

1  employer, JPMorgan, rescinded its employment offer after running a consumer check with
2  EWS, in which the only negative report is from BANK OF AMERICA.

3      71.    As a proximate result of BANK OF AMERICA's intentional misrepresentations,
4  Plaintiff has been prevented from obtaining a position in the banking industry comparable to
5  her position at BANK OF AMERICA, causing damage to Plaintiff in an amount to be proved
6  at trial.

7      72.    The reports of BANK OF AMERICA which were ultimately reported by EWS
8  were made and authorized by BANK OF AMERICA to prevent Plaintiff from continuing
9  employment in the banking industry. These reports constitute "black listing" of the Plaintiff in
10  violation of Labor Code sections 1050 through 1054 in that after BANK OF AMERICA
11  discharged Plaintiff from service, BANK OF AMERICA made a misrepresentation that
12  prevents or attempts to prevent Plaintiff from obtaining employment. Plaintiff is effectively
13  barred from employment in the banking industry as to any financial institution utilizing EWS
14  (or any other consumer agency that BANK OF AMERICA has reported negatively to .
15  regarding Plaintiff), as has already been demonstrated in her losing a position with JPMorgan,
16  which actions are prohibited by California State Law.

17      73.    As a direct result of such actions, Plaintiff has been damaged by losing a
18  lucrative position with JPMorgan and, therefter, being prevented from employment in the
19  banking industry as to any financial institution utilizing EWS (or any other consumer agency
20  that BANK OF AMERICA has reported negatively to regarding Plaintiff). Pursuant to Labor
21  Code section 1054, Plaintiff is entitled to treble damages as a consequence of the acts of the
22  DEFENDANTS.

23                      **Fourth Cause of Action**
                          **Defamation**
24
       74.    Plaintiff here realleges all paragraphs of this complaint as though fully set forth.
25
       75.    During and subsequent to Plaintiff's employment with BANK OF AMERICA,
26
    DEFENDANTS made statements about Plaintiff of a false and defamatory nature and in a
27
    malicious manner, thereby disparaging Plaintiff and preventing Plaintiff from engaging in
28

1 employment at JPMorgan and elsewhere.

2     76.    Subsequent to Plaintiff's employment with BANK OF AMERICA,
3 DEFENDANTS caused to be published and/or republished such false and defamatory
4 statements about Plaintiff, thereby causing Plaintiff economic and non-economic damage.

5     77.    DEFENDANTS published the false and defamatory publication to others
6 knowing that subsequent republication to persons interested in the Plaintiff's past employment
7 history was reasonably foreseeable.

8     78.    As set forth and alleged above, these false and defamatory statements include but
9 are not limited to an allegation that Plaintiff had an "Unfavorable Employment Record" while
10 employed by BANK OF AMERICA to EWS, a company "known throughout the financial
11 services industry as a leader in fraud prevention," thus insinuating that Plaintiff had engaged in
12 fraudulent activity while employed by BANK OF AMERICA, in a position of trust dealing
13 with access to personal information regarding customers of BANK OF AMERICA.

14     79.    Each of the defamatory statements made and/or published by DEFENDANTS
15 about Plaintiff was made with express malice, in bad faith, without belief in the truth of the
16 matter published, and/or with reckless disregard of the truth or falsity of the matter stated.

17     80.    Each of these statements harmed Plaintiff's reputation among her clients of
18 BANK OF AMERICA, her former colleagues of BANK OF AMERICA, and in the general
19 business community, and deterred other third parties from associating, dealing, and employing
20 or continuing employment of Plaintiff.

21     81.    Each of the defamatory statements was also defamatory per se because the
22 statements ascribe characteristics to the Plaintiff which are incompatible with the proper
23 conduct of Plaintiff's chosen business and profession. The defamatory statements have injured
24 Plaintiff in her reputation and continue to injure Plaintiff and her reputation among her former
25 colleagues, clients, and in the business community generally.

26     82.    It is reasonably foreseeable that DEFENDANTS' published allegation that
27 Plaintiff had an "Unfavorable Employment Record" would cause Plaintiff damage. As a direct
28 and proximate result of the publication of false and defamatory statements by DEFENDANTS,

1   Plaintiff has suffered and continues to suffer substantial damages.

2       83.    The actions of the DEFENDANTS were willful, wanton, fraudulent, oppressive,

3   and malicious. These acts were authorized and/or ratified by managing agents of BANK OF

4   AMERICA. Moreover, despite Plaintiff contesting the facts underlying that allegedly form the

5   basis of DEFENDANTS' malicious publication on EWS (and potentially other consumer

6   reports that Plaintiff has not yet been made aware of), BANK OF AMERICA still published

7   the defamatory statements, which further constitutes ratification of the actions of corporate

8   agents making the false claims. All of these actions entitle the Plaintiff to recover punitive

9   damages against the DEFENDANTS and each of them.

10                       **Fifth Cause of Action**
             **Intentional Infliction of Emotional Distress**

11
12       84.    Plaintiff here realleges all paragraphs of this complaint as though fully set forth.

      85.    Plaintiff claims that BANK OF AMERICA's conduct caused her to suffer severe

13   emotional distress in that DEFENDANTS' conduct was outrageous and intended to cause

14   Plaintiff emotional distress; or that DEFENDANTS' acted with reckless disregard of the

15   probability that Plaintiff would suffer emotional distress, knowing that Plaintiff was present

16   when the conduct occurred; and that Plaintiff suffered severe emotional distress; and that

17   DEFENDANTS' conduct was a substantial factor in causing Plaintiff's severe emotional

18   distress.

19
20       86.    As a direct and proximate result of the acts of defendants and each of them as

  alleged herein, including but not limited to, subjecting Plaintiff to discriminatory treatment

21   during her employment, wrongfully terminating Plaintiff on the basis of discrimination, and/or

22   making false statements about Plaintiff to EWS knowing that such statements would be

23   published, Plaintiff has suffered humiliation, mental anguish, and emotional and physical

24   distress.

25
26       87.    Furthermore, by reasons of the acts alleged above, Plaintiff has been prevented

  from attaining a comparable position, Plaintiff was without employment for a substantial

27   period of time, Plaintiff was coerced into a repayment agreement with BANK OF AMERICA

28

1  which she contends she was not obligated to repay but did so only on fear of losing her job
2  with BANK OF AMERICA, Plaintiff was prevented from obtaining a lucrative position with
3  JPMorgan, Plaintiff will be prevented from future employment with any bank or other financial
4  industry that uses EWS (or any other consumer reporting service that BANK OF AMERICA
5  has provided negative and false statements about her employment with BANK OF
6  AMERICA), and will thereby sustain further loss of earnings.

7      88.    Furthermore, by reasons of the acts alleged above, Plaintiff is entitled to an
8  award of punitive damages against the DEFENDANTS.

9                          Sixth Cause of Action
                  Negligent Infliction of Emotional Distress

10     89.    Plaintiff here realleges all paragraphs of this complaint as though fully set forth.

11     90.    Plaintiff claims that BANK OF AMERICA's conduct caused her to suffer
12  serious emotional distress. Plaintiff claims that DEFENDANTS were negligent; Plaintiff
13  suffered serious emotional distress; and that DEFENDANTS' negligence was a substantial
14  factor in causing Plaintiffs' serious emotional distress.

15     91.    During Plaintiff's employment, she was subjected to discriminatory treatment by
16  BANK OF AMERICA and ultimately wrongfully terminated on these grounds. Furthermore,
17  subsequent to Plaintiff's termination, DEFENDANTS published false statements about
18  Plaintiff as having an "Unfavorable Employment Record." To the extent that DEFENDANTS
19  did not reasonably investigate the motives for Plaintiff's termination and/or did not reasonably
20  investigate the alleged facts underlying its "Unfavorable Employment Record" rating of
21  Plaintiff, DEFENDANTS acted negligently.

22     92.    As a direct and proximate result of the acts of DEFENDANTS and each of them
23  as alleged herein, and set forth above, plaintiff has suffered serious emotional distress.
24  Accordingly, Plaintiff has suffered damages according to proof.

25                          Seventh Cause of Action
26              Intentional Interference with Economic Advantage

27     93.    Plaintiff here realleges all paragraphs of this complaint as though fully set forth.

28     94.    By doing the acts complained of herein, DEFENDANTS and each of them

1  intentionally interfered with plaintiff's probable prospective employment and the economic
2  advantage that would accrue to Plaintiff's benefit had BANK OF AMERICA not made false
3  statements about Plaintiff to EWS (and any other consumer reporting service that BANK OF
4  AMERICA has provided negative and false statements about her employment with BANK OF
5  AMERICA).

6      95.    In terminating Plaintiff, BANK OF AMERICA had reason to know that Plaintiff
7  would be searching for new employment in the banking and business field, which has been her
8  long term career. Defendants and each of them made false statements that prevents plaintiff
9  from obtaining employment with any bank, financial institution, or other employer who runs a
10 report from EWS (and any other consumer reporting service that BANK OF AMERICA has
11 provided negative and false statements about her employment with BANK OF AMERICA).

12     96.    As a direct and proximate result of the acts of defendants and each of them as
13 alleged herein, plaintiff has suffered damages according to proof.

14                          Eighth Cause of Action
15            Negligent Interference with Economic Advantage

15     97.    Plaintiff here realleges all paragraphs of this complaint as though fully set forth.

16     98.    By doing the acts complained of herein, defendants and each of them negligently
17 interfered with plaintiff's probable prospective employment and the economic advantage that
18 would accrue to plaintiff's benefit had BANK OF AMERICA not made false statements about
19 Plaintiff to EWS (and any other consumer reporting service that BANK OF AMERICA has
20 provided negative and false statements about her employment with BANK OF AMERICA).

21     99.    In terminating Plaintiff, BANK OF AMERICA had reason to know that Plaintiff
22 would be searching for new employment in the banking and business field, which has been her
23 long term career. Subsequent to Plaintiff's termination, DEFENDANTS published false
24 statements about Plaintiff as having an "Unfavorable Employment Record." To the extent that
25 DEFENDANTS did not reasonably investigate the alleged facts underlying its "Unfavorable
26 Employment Record" rating of Plaintiff, DEFENDANTS acted negligently.

27     100.   As a direct and proximate result of the acts of defendants and each of them as
28

1  alleged herein, plaintiff has suffered damages according to proof.

2      Wherefore, plaintiff prays for relief as follows:

3      1.    For general and special damages according to proof;

4      2.    for interest upon said damages at the maximum rate allowed by statute;

5      3.    for liquidated damages;

6      4.    for punitive and exemplary damages;

7      5.    for attorney's fees as permitted by statute or common law;

8      6.    for costs of suit incurred; and

9      7.    for such other and further relief as the Court may deem just and proper.

10

11  Dated: June 27, 2013                    aiman-smith marcy

12

13

14                                          Hallie Von Rock
                                            Attorneys for Plaintiff Salma Aghmane

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a jury on all causes of action and claims with respect to which she has a right to jury trial.

Dated: June 27, 2013

aiman-smith, marcy

Hallie Von Rock
Attorneys for Plaintiff Salma Aghmane



**Superior Court of California, County of San Francisco**
## Alternative Dispute Resolution
## Program Information Package



> The plaintiff must serve a copy of the ADR information package
> on each defendant along with the complaint. (CRC 3.221(c))

### WHAT IS ADR?
Alternative Dispute Resolution (ADR) is the term used to describe the various options available for settling a dispute without a trial. There are many different ADR processes, the most common forms of which are mediation, arbitration and settlement conferences. In ADR, trained, impartial people decide disputes or help parties decide disputes themselves. They can help parties resolve disputes without having to go to court.

### WHY CHOOSE ADR?
"It is the policy of the Superior Court that every noncriminal, nonjuvenile case participate either in an early settlement conference, mediation, arbitration, early neutral evaluation or some other alternative dispute resolution process prior to trial." (Local Rule 4)

ADR can have a number of advantages over traditional litigation:

- **ADR can save time.** A dispute often can be resolved in a matter of months, even weeks, through ADR, while a lawsuit can take years.
- **ADR can save money,** including court costs, attorney fees, and expert fees.
- **ADR encourages participation.** The parties may have more opportunities to tell their story than in court and may have more control over the outcome of the case.
- **ADR is more satisfying.** For all the above reasons, many people participating in ADR have reported a high degree of satisfaction.

### HOW DO I PARTICIPATE IN ADR?
Litigants may elect to participate in ADR at any point in a case. General civil cases may voluntarily enter into the court's ADR programs by any of the following means:

- Filing a Stipulation to ADR: Complete and file the Stipulation form (attached to this packet) at the clerk's office located at 400 McAllister Street, Room 103;
- Indicating your ADR preference on the Case Management Statement (also attached to this packet); or
- Contacting the court's ADR office (see below) or the Bar Association of San Francisco's ADR Services at 415-982-1600 or www.sfbar.org/adr for more information.

**For more information about ADR programs or dispute resolution alternatives, contact:**

Superior Court Alternative Dispute Resolution
400 McAllister Street, Room 103, San Francisco, CA 94102
415-551-3876

*Or, visit the court ADR website at www.sfsuperiorcourt.org*

The San Francisco Superior Court currently offers three ADR programs for general civil matters; each program is described below:

## 1) EARLY SETTLEMENT CONFERENCES

The goal of early settlement is to provide participants an opportunity to reach a mutually acceptable settlement that resolves all or part of a dispute.

**(A) THE BAR ASSOCIATION OF SAN FRANCISCO (BASF) EARLY SETTLEMENT PROGRAM (ESP):** This program, provided in conjunction with the court, pairs parties with a two-member volunteer attorney panel. The panels are comprised of one plaintiff and one defense attorney, each with at least 10 years of trial experience. On occasion, a panelist with extensive experience in both plaintiff and defense roles serves as a sole panelist.

**Operation:** The settlement conference typically occurs 2 to 3 months prior to the trial date. BASF informs the participants of the conference date well in advance and provides the names of the panelists and location of the conference approximately 2 weeks prior to the conference. Panelists provide at **no cost** up to 2 hours of their time at each conference, and many panelists provide additional time at no cost if a settlement is imminent. A conference typically begins with a brief meeting with all parties and their attorneys during which each side presents an initial statement. The panelists then assist the parties in understanding and candidly discussing the strengths and weaknesses of their cases, utilizing private meetings as appropriate. If a case does not settle during the first two hours, parties have the option to hire the panelists to continue the conference.

**Cost:** BASF charges an administrative fee of $250 per party. For information on fees for cases involving multiple parties, please contact BASF. Parties who meet certain eligibility requirements may request a waiver of the fee. For more information, please contact BASF's ESP Coordinator at 415-782-9000 ext. 8717 or visit www.sfbar.org/esp.

**(B) COURT SETTLEMENT CONFERENCE:** Parties may elect to apply to the Presiding Judge's department for a specially-set mandatory settlement conference. See Local Rule 5.0 for further instructions. Upon approval of the Presiding Judge, the court will schedule the conference and assign the case for a settlement conference.

## 2) MEDIATION

Mediation is a voluntary, flexible, and confidential process in which a neutral third party facilitates negotiations. The goal of mediation is to reach a mutually satisfactory agreement, before incurring the expense of going to court, that resolves all or part of a dispute after exploring the interests, needs, and priorities of the parties in light of relevant evidence and the law. A mediator strives to bring the parties to a mutually beneficial settlement of the dispute.

**(A) MEDIATION SERVICES OF THE BAR ASSOCIATION OF SAN FRANCISCO,** in cooperation with the Superior Court, is designed to help civil litigants resolve disputes before they incur substantial costs in litigation. While it is best to utilize the program at the outset of litigation, parties may use the program at any time while a case is pending.

**Operation:** A mediator provides at **no cost** one hour of preparation time and two hours of mediation time. After those three hours, if the case is not resolved, parties have the option to continue the process and pay the mediator at his or her regular hourly rate. BASF pre-screens all mediators based upon strict educational and experience requirements. Parties may select a specific mediator or BASF will help the parties make a selection. The BASF website contains photographs, biographies, and videos of the mediators as well as testimonials to assist with the selection process.

**Cost:** BASF charges an administrative fee of $250 per party. For information on fees for cases involving multiple parties, please contact BASF. The hourly mediator fee beyond the first three hours will vary depending on the mediator selected. Parties who meet certain eligibility requirements may request a waiver of the fee. For more information, please contact BASF's Mediation Coordinator at 415-782-9000 ext. 8787 or visit www.sfbar.org/mediation.

**(B) PRIVATE MEDIATION:** Although not currently a part of the court's ADR program, civil disputes may also be resolved through private mediation. Parties may elect any private mediator or mediation organization of their choice; the selection and coordination of private mediation is the responsibility of the parties. Parties may find mediators and organizations on the Internet. The cost of private mediation will very depending on the mediator selected.

## 3) ARBITRATION

An arbitrator is neutral attorney who presides at a hearing where the parties present evidence through exhibits and testimony. The arbitrator applies the law to the facts of the case and makes an award based upon the merits of the case.

**(A) JUDICIAL ARBITRATION:** When the court orders a case to arbitration it is called "judicial arbitration". The goal of arbitration is to provide parties with an adjudication that is earlier, faster, less formal, and usually less expensive than a trial.

**Operation:** Pursuant to CCP 1141.11 and Local Rule 4, all civil actions in which the amount in controversy is $50,000 or less, and no party seeks equitable relief, shall be ordered to arbitration. (Upon stipulation of all parties, other civil matters may be submitted to judicial arbitration.) A case is ordered to arbitration after the Case Management Conference. An arbitrator is chosen from the court's Arbitration Panel. Arbitrations are generally held between 7 and 9 months after a complaint has been filed. Judicial arbitration is not binding unless all parties agree to be bound by the arbitrator's decision. Any party may request a trial within 30 days after the arbitrator's award has been filed.

Local Rule 4.2 allows for mediation in lieu of judicial arbitration, so long as the parties file a stipulation to mediate after the filing of a complaint. If settlement is not reached through mediation, a case proceeds to trial as scheduled..

**Cost:** There is no cost to the parties for judicial arbitration.

**(B) PRIVATE ARBITRATION:** Although not currently a part of the court's ADR program, civil disputes may also be resolved through private arbitration. Here, the parties voluntarily consent to arbitration. If all parties agree, private arbitration may be binding and the parties give up the right to judicial review of the arbitrator's decision. In private arbitration, the parties select a private arbitrator and are responsible for paying the arbitrator's fees.

# EXHIBIT D

Roxanne M. Wilson (SBN 94627)
REED SMITH LLP
355 South Grand Avenue
Suite 2900
Los Angeles, CA 90071-1514
Telephone: +1 213 457 8000
Facsimile: +1 213 457 8080

Renee C. Feldman (SBN 253877)
REED SMITH LLP
101 Second Street
Suite 1800
San Francisco, CA 94105-3659
Telephone: +1 415 543 8700
Facsimile: +1 415 391 8269

Attorneys for Defendants
Bank of America Corporation; Bank of
America, N.A.; Merrill Lynch & Co., Inc.

ENDORSED
FILED
Superior Court of California
County of San Francisco

AUG 0 / 2013

CLERK OF THE COURT
BY: _____ANNA L. TORRES_____
Deputy Clerk

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

SUPERIOR COURT OF THE STATE OF CALIFORNIA

FOR THE COUNTY OF SAN FRANCISCO

| | |
|---|---|
| SALMA AGHMANE,<br><br>Plaintiff,<br><br>vs.<br><br>BANK OF AMERICA CORPORATION; BANK OF AMERICA, N.A.; MERRILL LYNCH & CO., INC., and DOES One through 200,<br><br>Defendants. | No.: CGC-13-532473<br><br>**ANSWER TO UNVERIFIED COMPLAINT** |

— 1 —

US_ACTIVE-113825374

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

Defendants Bank of America Corporation; Bank of America, N.A.; and Merrill Lynch & Co., Inc. ("Defendants") hereby respond to the unverified Complaint filed by Plaintiff Salma Aghmane ("Plaintiff") as follows:

## GENERAL DENIAL

1.     Pursuant to California Code of Civil Procedure Section 431.30(d), Defendants deny, generally and specifically, each and every allegation contained in Plaintiff's unverified Complaint, and deny the Complaint as a whole as it relates to Defendants.  Defendants further deny, generally and specifically, that Plaintiff has been injured in any amount by reason of any act or omission of Defendants or by anyone acting on Defendants' behalf or at its direction.

## AFFIRMATIVE DEFENSES

### FIRST  AFFIRMATIVE DEFENSE

### (FAILURE TO STATE A CLAIM)

2.     Defendants allege, based on information and belief, that the Complaint, and each cause of action for relief set forth therein, fails to state a claim upon which relief may be granted.

### SECOND AFFIRMATIVE DEFENSE

### (STATUTES OF LIMITATION)

3.     Defendants allege, based on information and belief, that the Complaint, and each cause of action for relief set forth therein, is barred by the applicable statutes of limitation, including, but not limited to, those set forth in Code of Civil Procedure Section 335.1, 338, 338.1, 339 and/or 340; and/or Government Code Sections 12960 and/or 12965; and/or Labor Code Section 1197.5.

### THIRD AFFIRMATIVE DEFENSE

### (FAILURE TO EXHAUST ADMINISTRATIVE REMEDIES)

4.     Defendants allege, based on information and belief, that Plaintiff has failed to exhaust her administrative remedies and that this Court therefore lacks jurisdiction over her claims.

### FOURTH  AFFIRMATIVE DEFENSE

### (SCOPE OF JURISDICTION; ADMINISTRATIVE REMEDIES)

5.     Defendants allege, based on information and belief, that the Court lacks subject matter jurisdiction over some or all of Plaintiff's causes of action to the extent, without limitation,

ANSWER TO UNVERIFIED COMPLAINT

that the allegations in the Complaint exceed the scope of Plaintiff's administrative charges, if any.

## FIFTH AFFIRMATIVE DEFENSE
### (LEGITIMATE BUSINESS REASONS)

6.     While Defendants deny that they engaged in the conduct attributed to them by Plaintiff, if it is determined that the conduct alleged is legally attributable to Defendants, Defendants allege that the conduct was not unlawful inasmuch as the conduct was justified, privileged, truthful and/or reasonably and properly based on legitimate nondiscriminatory bases, business reasons and/or as a result of business necessity.

## SIXTH AFFIRMATIVE DEFENSE
### (CONDUCT OF OTHERS; PROXIMATE CAUSE)

7.     Defendants allege, based on information and belief, that Plaintiff's damages, if any, are the proximate result of independent, intervening, or superseding causes and/or the conduct of Plaintiff and/or others, for which Defendants were not responsible.

## SEVENTH AFFIRMATIVE DEFENSE
### (AVOIDABLE CONSEQUENCES)

8.     Although Defendants deny that they engaged in any of the misconduct attributed to them by Plaintiff, if it is determined that the conduct alleged is legally attributable to Defendants, then Defendants allege, based on information and belief, that Plaintiff's damages, if any, are barred, in whole or in part, by the avoidable consequences doctrine.

## EIGHTH AFFIRMATIVE DEFENSE
### (FAILURE TO MITIGATE)

9.     Although Defendants deny that Plaintiff has been damaged in any way, if it should be determined that Plaintiff has been damaged, then Defendants allege, based on information and belief, that Plaintiff has failed to mitigate her purported damages, and further allege that, to the extent any damages could have been mitigated, such sums should be deducted from any award of damages.

## NINTH AFFIRMATIVE DEFENSE
### (LACK OF MALICE, FRAUD, OPPRESSION OR INTENT)

10.     Although Defendants deny that they engaged in any of the misconduct attributed to

ANSWER TO UNVERIFIED COMPLAINT

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

them by Plaintiff, if it is determined that the conduct alleged is legally attributable to Defendants, Defendants lacked sufficient intent for the commission of the conduct alleged in the Complaint and did not act with any specific or general malice, fraud, oppression or ill intent towards Plaintiff.

### TENTH AFFIRMATIVE DEFENSE
### (NO PUNITIVE DAMAGES; UNCONSTITUTIONAL)

11. Defendants allege, based on information and belief, that Plaintiff's punitive damages claims fail to state a claim for punitive damages; constitute a denial of Defendants' rights to due process of law and equal protection of the law; and are violative of the separation of judicial, legislative, and executive powers guaranteed by the United States Constitution and the California Constitutions. California Civil Code Section 3294, relating to the imposition of punitive damages, is invalid on its face, or as applied to Defendant in this action, pursuant to, without limitation, Article I, Section 10, Article IV, Section 2, and the First, Fifth, Sixth, Eighth and Fourteenth Amendments to the Constitution of the United States and Articles I and IV of the California Constitution.

### ELEVENTH AFFIRMATIVE DEFENSE
### (AFTER-ACQUIRED EVIDENCE DOCTRINE)

12. Defendants allege, based on information and belief, that Plaintiff's causes of action for damages and/or other relief are barred by the after-acquired evidence doctrine.

### TWELFTH AFFIRMATIVE DEFENSE
### (EQUITABLE DEFENSES)

13. Defendants allege, based on information and belief, that the Complaint, and each cause of action for relief set forth therein, is barred by the equitable doctrines of estoppel, waiver, unclean hands and/or laches, as a result of, without limitation, Plaintiff's own acts and/or omissions.

### THIRTEENTH AFFIRMATIVE DEFENSE
### (AMBIGUITY OF CLAIMS)

14. The Complaint is vague, ambiguous, indefinite and uncertain; therefore, Defendants reserve the right to amend or supplement its affirmative defenses asserted herein, and to present evidence supportive of different or additional defenses, upon ascertaining the specific nature of the violations alleged.

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

ANSWER TO UNVERIFIED COMPLAINT

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

## FOURTEENTH AFFIRMATIVE DEFENSE
### (GOOD FAITH AND REASONABLE CARE; PLAINTIFF'S FAILURE)

15. The Complaint, and each claim for relief set forth therein, is barred because Defendants have, at all times, acted in good faith, relied in good faith upon standards and guidelines set forth in applicable state laws and regulations, and has exercised reasonable care (including, without limitation, appropriate investigation) to prevent and correct any and all discrimination, harassment and/or retaliation of the sort alleged in the Complaint, and Plaintiff failed to take advantage of Defendants' anti-harassment, anti-discrimination, and/or anti-retaliation policies/procedures.

## FIFTEENTH AFFIRMATIVE DEFENSE
### (CONSENT/ACQUIESCENCE/RATIFICATION)

16. Plaintiff acquiesced in, consented to and/or ratified the acts and omissions alleged in the Complaint.

## SIXTEENTH AFFIRMATIVE DEFENSE
### (SPECULATIVE DAMAGES)

17. Plaintiff has suffered no actual damages and any damages claimed by Plaintiff in the Complaint are speculative and cannot be recovered from Defendant.

## SEVENTEENTH AFFIRMATIVE DEFENSE
### (PLAINTIFF'S COMPARATIVE FAULT OR NEGLIGENCE)

18. The losses or damages sustained by Plaintiff, if any, were wholly caused by the acts or omissions of Plaintiff and any loss or injury attributable to Defendants must be reduced by Plaintiff's comparative fault or negligence contributing to and proximately causing such damage.

## EIGHTEENTH AFFIRMATIVE DEFENSE
### (BUSINESS JUSTIFICATION)

19. Defendants allege, based on information and belief, that any and all conduct of which Plaintiff complains or which is attributable to Defendants, and/or its agents or employees, was a just and proper exercise of management discretion undertaken for fair and honest business reasons, and cannot form the basis of a valid damages claim.

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

### NINETEENTH AFFIRMATIVE DEFENSE
### (OUTSIDE COURSE AND SCOPE; NO RATIFICATION)

20.    Defendants allege, based on information and belief, that any and all conduct of any and all individuals of the type alleged in the Complaint, if and to the extent that it occurred at all, was outside the course and scope of such persons' agency and employment with Defendants and was neither known to, nor ratified by, Defendants.

### TWENTIETH AFFIRMATIVE DEFENSE
### (FRIVOLOUS CLAIM; ATTORNEYS' FEES)

21.    Plaintiff's maintenance of this action is without foundation, and is frivolous and/or unreasonable, entitling Defendants to an award of attorneys' fees in this matter.

### TWENTY-FIRST AFFIRMATIVE DEFENSE
### (MANAGERIAL IMMUNITY)

22.    The claims alleged to have derived from the actions or omissions of Defendants' agents are barred by the doctrine of managerial immunity.

### TWENTY-SECOND AFFIRMATIVE DEFENSE
### (SAME RESULT IN ABSENCE OF ALLEGED UNLAWFUL CONDUCT)

23.    Defendants allege, based on information and belief, that any and all conduct of which Plaintiff complains or which is attributable to Defendant, and/or their agents or employees, would have occurred in the absence of any alleged unlawful conduct, and cannot form the basis of a valid damages claim, or may reduce the remedies available for such claims.

### TWENTY-THIRD AFFIRMATIVE DEFENSE
### (BONA FIDE OCCUPATIONAL QUALIFICATION)

24.    Defendants allege, based on information and belief, that any and all conduct of which Plaintiff complains or which is attributable to Defendants, and/or their agents or employees, is based upon bona fide occupational qualification(s), and cannot form the basis of a valid liability or damages claim.

REED SMITH LLP

A limited liability partnership formed in the State of Delaware

## TWENTY-FOURTH AFFIRMATIVE DEFENSE
## (NATIONAL BANK ACT PREEMPTION)

25.　Defendants allege, based on information and belief, that some or all of Plaintiff's state law claims for relief are preempted by the National Bank Act, 12 U.S.C. § 21 *et seq.*

## TWENTY-FIFTH AFFIRMATIVE DEFENSE
## (WORKERS' COMPENSATION PREEMPTION)

26.　Defendants allege, based on information and belief, that Plaintiff's claims are barred, in whole or in part, because the sole and exclusive remedy for such injuries is governed by the California Workers' Compensation Act, Labor Code §§ 3200 *et seq.*

## TWENTY-SIXTH AFFIRMATIVE DEFENSE
## (AT WILL EMPLOYMENT)

27.　Plaintiff's claims are barred, in whole or in part, because Plaintiff's employment, having no specified term, was terminable at will, with or without cause.

## TWENTY-SEVENTH AFFIRMATIVE DEFENSE
## (TRUTH OF COMMENTS ABOUT PLAINTIFF)

28.　Defendants allege that any and all comments they made about Plaintiff to EWS were true and are a bar to Plaintiff's claims of defamation.

## TWENTY-EIGHTH AFFIRMATIVE DEFENSE
## (TRUTH OF COMMENTS ABOUT PLAINTIFF)

29.　Defendants allege that any and all comments they made about Plaintiff to EWS were opinions and are a bar to Plaintiff's claims of defamation.

## TWENTY-NINTH AFFIRMATIVE DEFENSE
## (CIV. CODE § 47(C) PRIVILEGE)

30.　Defendants allege that any and all comments they made about Plaintiff to EWS were privileged statements made by persons with a common interest, persons in special relationships, and persons responding to a request for information.

ANSWER TO UNVERIFIED COMPLAINT

31.     Defendants have not completed its investigation in this matter and therefore cannot fully anticipate all affirmative defenses that may be applicable to this action due to the preliminary status of this action.  Thus, Defendants reserves the right to amend their Answer to the Complaint and to assert further affirmative defenses in the event that such defenses become applicable.

## PRAYER

WHEREFORE, Defendants pray for judgment in their favor and against Plaintiff as follows:

1.     That the Complaint be dismissed with prejudice;

2.     That Plaintiff take nothing by virtue of this action;

3.     That judgment be entered in favor of Defendants;

4.     That Defendants be awarded attorneys' fees and costs of suit incurred herein; and

5.     For such other and further relief as the Court may deem proper.


DATED:  August 7, 2013

REED SMITH LLP


By: _____
Roxanne M. Wilson
Renee C. Feldman
Attorneys for Defendants
Bank of America Corporation; Bank of America, N.A.; Merrill Lynch & Co., Inc.

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

– 8 –

# PROOF OF SERVICE

I am a resident of the State of California, over the age of eighteen years, and not a party to the within action. My business address is REED SMITH LLP, 101 Second Street, Suite 1800, San Francisco, California 94105-3659. On August 7, 2013, I served the following document(s) by the method indicated below:

## ANSWER TO UNVERIFIED COMPLAINT

☐ by transmitting via facsimile on this date from fax number +1 415 391 8269 the document(s) listed above to the fax number(s) set forth below. The transmission was completed before 5:00 PM and was reported complete and without error. The transmission report, which is attached to this proof of service, was properly issued by the transmitting fax machine. Service by fax was made by agreement of the parties, confirmed in writing. The transmitting fax machine complies with Cal.R.Ct 2003(3).

☑ by placing the document(s) listed above in a sealed envelope with postage thereon fully prepaid, in the United States mail at San Francisco, California addressed as set forth below. I am readily familiar with the firm's practice of collection and processing of correspondence for mailing. Under that practice, it would be deposited with the U.S. Postal Service on that same day with postage thereon fully prepaid in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if the postal cancellation date or postage meter date is more than one day after the date of deposit for mailing in this Declaration.

☐ by placing the document(s) listed above in a sealed envelope(s) and by causing personal delivery of the envelope(s) to the person(s) at the address(es) set forth below. A signed proof of service by the process server or delivery service will be filed shortly.

Randall B. Aiman-Smith
Reed W.L. Marcy
Hallie Von Rock
Aiman-Smith & marcy
7677 Oakport Street, Suite 1020
Oakland, CA 94621

I declare under penalty of perjury under the laws of the State of California that the above is true and correct. Executed on August 7, 2013, at San Francisco, California.

_Gloria S. Sandoval_
Gloria S. Sandoval

US_ACTIVE-114014893

REED SMITH LLP
A limited liability partnership formed in the State of Delaware