UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SALMA AGHMANE, | No. C-13-03698 DMR |
| Plaintiff, | **ORDER DENYING PLAINTIFF'S MOTION FOR LEAVE TO FILE MOTION FOR RECONSIDERATION** |
| v. | |
| BANK OF AMERICA CORPORATION, | |
| Defendant. | |

Plaintiff Salma Aghmane moves for leave to file a motion for reconsideration of the court's December 5, 2014 order granting in part Defendant Bank of America, N.A.'s ("BANA") motion for summary judgment and denying Plaintiff's motion for summary judgment (Docket No. 114, "Order on MSJs"). [Docket No. 124 (Pl.'s Mot.).]

Civil Local Rule 7-9 provides that "[b]efore the entry of a judgment adjudicating all of the claims and the rights and liabilities of all the parties in a case, any party may make a motion before a Judge requesting that the Judge grant the party leave to file a motion for reconsideration of any interlocutory order . . . . No party may notice a motion for reconsideration without first obtaining leave of Court to file the motion." N.D. Civ. L.R. 7-9(a). A motion for reconsideration may be made on one of three grounds: (1) a material difference in fact or law exists from that which was presented to the court, which, in the exercise of reasonable diligence, the party applying for reconsideration did not know at the time of the order for which reconsideration is sought; (2) the

emergence of new material facts or a change of law; or (3) a manifest failure by the court to consider material facts or dispositive legal arguments presented before such order. N.D. Civ. L.R. 7-9(b)(1)-(3). The moving party may not reargue any written or oral argument previously asserted to the court. N.D. Civ. L.R. 7-9(c). Whether to grant leave to file a motion for reconsideration under Rule 7-9 is committed to the court's sound discretion. *See Montebueno Mktg., Inc. v. Del Monte Corp.—USA*, 570 F. App'x 675, 676 (9th Cir. 2014) (citing *Bias v. Moynihan*, 508 F.3d 1212, 1223 (9th Cir. 2007)). Plaintiff seeks reconsideration based on a "manifest failure by the Court to consider material facts or dispositive legal arguments which were presented to the Court" regarding her defamation claim.

## A.   Factual and Procedural Background

Plaintiff worked for BANA. BANA terminated Plaintiff for allegedly making unauthorized transactions on her cousin D.A.'s bank account, resulting in financial loss to BANA. In addition to firing Plaintiff, BANA reported her to Early Warning Services, LLC ("EWS"). EWS is a third party that provides fraud prevention services to member financial institutions by maintaining a database of members' former employees who were terminated for knowingly causing or attempting to cause financial loss. BANA had to meet several conditions before reporting Plaintiff to EWS. At issue is EWS' third condition, which requires that the participating financial institution (here, BANA) either obtained an oral or written admission of criminal wrongdoing from the employee, or had conclusive evidence of criminal wrongdoing by the employee.

The undisputed evidentiary record contains the following information. D.A. is Plaintiff's cousin. She lived in the San Francisco Bay Area for a brief period of time to study English before returning to her native Morocco. On November 18, 2012, D.A. signed a "Fraud Statement of Claimant." In her statement, D.A. identified nine separate unauthorized transactions made on her bank account between September 14 and October 12, 2012, totaling $16,000. The statement further declared that D.A. did not authorize or receive benefit from any of the challenged transactions.

BANA fraud investigator Karen Muth looked into unauthorized transactions on D.A.'s account by reviewing the fraud case file. In addition to D.A.'s statement, the case file also included summaries of at least three telephone calls made by Defendant's fraud analysts to D.A. in Morocco.

The case notes from a December 4, 2012 call indicate that D.A. told a fraud analyst that "she never lived w/[Plaintiff], never gave info, or cards," and that D.A. "was upset to learn" her cousin had received funds from her account. The case notes from a call with D.A. two days later reflect that D.A. asked an analyst if BANA was "sure" that Plaintiff was involved with the transactions. When told that BANA "had valid evidence that [Plaintiff] received benefit," D.A. asked "what would happen if she were to work it out w/ her cousin." The notes reflect that the analyst told D.A. that "she has a right at any time to [withdraw] claim." In a third call between D.A. and a fraud analyst, D.A. asked about the process of withdrawing her claim and stated "that she is considering contacting [Plaintiff] and possibly working it out with [Plaintiff]." D.A. told the analyst that she would contact BANA by the end of the following week with her decision. D.A. never withdrew her fraud claim.

Muth also conferred with the fraud claims and retail investigation departments and conducted additional research, such as running an Accurint search on Plaintiff, and verifying that payments were made from D.A.'s account to Plaintiff's personal credit cards. In an interview with Muth, Plaintiff admitted accessing her cousin's account but explained that D.A. owed her money relating to D.A.'s temporary move to San Francisco, and had verbally told Plaintiff to take the money from her banking account by conducting online transactions. Plaintiff later sent Muth documentation of the alleged payments Plaintiff had advanced on behalf of D.A. Muth did not contact D.A. to get her reactions to Plaintiff's denials and explanations. Indeed, Muth never spoke with or interviewed D.A. at any time.

Plaintiff alleged that Defendant did not have an admission from Plaintiff, nor did Muth have conclusive evidence that Plaintiff committed a financial crime before reporting her to EWS. According to Plaintiff, BANA made a false and defamatory statement by making the EWS report, which labeled Plaintiff as someone who knowingly caused or attempted to cause financial loss to BANA.

At summary judgment, the court concluded that Plaintiff had demonstrated the existence of a dispute of material fact as to whether the publication at issue, Defendant's reporting to EWS, was false. (Order on MSJs 32.)

However, the court ultimately held that the common interest privilege protected Defendant's reporting to EWS. A privileged publication is made "without malice, to a person interested therein, (1) by one who is also interested, or (2) by one who stands in such a relation to the person interested as to afford a reasonable ground for supposing the motive for the communication to be innocent, or (3) who is requested by the person interested to give the information." Cal. Civ. Code § 47(c). Plaintiff did not dispute that Defendant's reporting fell within the scope of the common interest privilege; thus, the burden shifted to Plaintiff to prove that the publication—Defendant's reporting to EWS—was made with malice. *See Lundquist v. Reusser*, 7 Cal. 4th 1193, 1203 (1994). The malice necessary to defeat an assertion of the qualified privilege is "actual malice," which may be established in two ways: "[1] by a showing that the publication was motivated by hatred or ill will towards the plaintiff *or* [2] by a showing that the defendant lacked reasonable grounds for belief in the truth of the publication and therefore acted in reckless disregard of the plaintiff's rights." *Sanborn v. Chronicle Pub. Co.*, 18 Cal. 3d 406, 413 (1976) (citation omitted).

In its order, the court set forth Plaintiff's argument on malice as follows:

> Plaintiff does not assert the existence of hatred or ill will toward Plaintiff. Instead, she argues that Defendant acted with actual malice because it lacked reasonable grounds to believe that it possessed conclusive evidence of criminal wrongdoing by Plaintiff when it reported her to EWS. Specifically, Plaintiff argues that despite providing [BANA investigator Karen] Muth with documentation of her cousin's debt to her, Defendant chose not to look further into the matter; thus, Defendant made a deliberate decision not to acquire knowledge of facts that could prove the falsity of the claims against Plaintiff. Plaintiff argues that Muth should have investigated further to determine whether in fact the transactions were authorized. According to Plaintiff, this failure amounted to reckless disregard, thereby defeating the qualified privilege asserted by Defendant.

(Order on MSJs 33-34.) The court noted that "while 'a lack of inquiry and investigation *may* supply the sufficient inference of lack of good faith or negligence sufficient to supply the element of malice' in light of all of the relevant evidence, mere failure to inquire alone 'cannot constitute lack of reasonable or probable cause' to believe in the truth of the publication." (Order on MSJs 34 (citing *Rollenhagen v. City of Orange*, 116 Cal. App. 3d 414, 423 (1981)).) Finding that Plaintiff's malice claim "rests solely on her allegation that Defendant failed to conduct an adequate investigation," the court concluded that that basis alone was insufficient to establish malice as a matter of law. (Order on MSJs 34.)

**B.     The Present Motion**

Plaintiff now asserts that the court misconstrued her malice argument as resting solely on Defendant's failure to perform an adequate investigation. Plaintiff claims that "in the totality of circumstances BANA could not possibly have reasonably believed it possessed 'conclusive evidence'–proof that put an end to debate–of criminal wrongdoing by plaintiff." (Pl.'s Mot. 4.) Plaintiff points to the court's conclusion that "a dispute of material fact exists as to whether the publication, i.e., Defendant's reporting to EWS, was false," and argues that if a material fact exists as to the falsity of Defendant's reporting, then a material fact also necessarily exists as to whether Defendant had a reasonable basis for believing the statement to be true for purposes of establishing malice.

There are problems with this argument. To begin with, Plaintiff's counsel conceded at the summary judgment hearing that the sole basis for Plaintiff's claim of malice was Defendant's failure to investigate:

> **The Court:** Mr. Marcy, what evidence exists of malice? Because malice – Plaintiff bears the burden of proving malice in order to escape the privilege.
>
> **Mr. Marcy:** . . . I don't have to prove that Karen Muth hated Salma Aghmane. That's not my burden of proof. What I have to prove is that Karen Muth pressed that radio button on the internet to put my client on the [EWS] deadbeat list without even looking into whether or not the cousin's claims were true. And Karen Muth admitted that she didn't look into it. That's why on my motion I don't think there's a jury issue. What is the jury going to decide? Is the jury going to decide, well, maybe she thought about it really hard. She says, no, I didn't look into it. When Salma told me she had permission, I didn't look into it. I made no –
>
> **The Court:** Is there any other basis for malice other than the alleged lack of Muth's alleged failure to investigate?
> . . .
>
> **The Court:** What is the proof of malice for purposes of overcoming the 47(c) privilege –
> . . .
>
> **Mr. Marcy:** . . . so what is the evidence that the Plaintiff has that Ms. Muth didn't do an investigation – it's all the evidence that it is, and it's all based on undisputed facts. She didn't ask, she didn't inquire, she didn't talk to Salma, she didn't look at Salma's evidence, and she didn't talk to [D.A.].

(Hr'g Tr., Nov. 13, 2014, 16-18.) The court asked counsel one final time to identify any other basis for Plaintiff's claim of malice beyond Muth's failure to adequately investigate the matter, and

5

counsel was unable to do so.  (Tr. 18:24-19:21.)  The court considered the arguments presented by Plaintiff before ruling.  On that basis alone, Plaintiff's current motion fails, for she has not demonstrated "a manifest failure by the court to consider material facts or dispositive legal argument presented before the court entered its summary judgment order."  N.D. Civ. L.R. 7-9(b)(3).

Moreover, upon consideration of Plaintiff's newly framed argument, the court reaches the same conclusion.  Plaintiff's current argument is as follows: Plaintiff did not admit that she intended to cause loss to the bank, but instead refuted the allegation that she performed unauthorized transactions.  Therefore, Defendant could not have reasonably believed that it possessed conclusive evidence of criminal wrongdoing.  Stated another way, because a jury could decide that Defendant should have done a more thorough investigation before deciding to report Plaintiff to EWS, a jury could also find that Defendant acted with malice.

This ignores the difference between negligence and malice.  The malice required to defeat the assertion of the common interest privilege focuses upon the defendant's state of mind; it cannot be premised on negligence alone.  *See Rollenhagen*, 116 Cal. App. 3d at 423 ("malice focuses upon the defendant's state of mind, not his conduct.  Mere negligence in inquiry cannot constitute lack of reasonable or probable cause."); *see also Roemer v. Retail Credit Co.*, 3 Cal. App. 3d 368, 372 (1970) ("[i]t is only when the negligence amounts to a reckless or wanton disregard for the truth, so as to reasonably imply a wilful disregard for or avoidance of accuracy, that malice is shown.").  "Inherent in the concept of reckless disregard for the truth is the notion that it is the speaker's belief regarding the accuracy of his [or her] statements, rather than the truth of the underlying statements themselves, that is relevant to the malice determination."  *Noel v. River Hills Wilsons, Inc.*, 113 Cal. App. 4th 1363, 1371 (2003) (alteration in original) (citation and quotation marks omitted).

Plaintiff did not present any evidence that Defendant doubted the accuracy of its reporting to EWS, or that Defendant exhibited behavior from which a jury could infer a wilful disregard for the truth.  Muth reviewed the fraud case file, including the summaries of the calls with D.A., conferred

6

with internal departments, and conducted additional research prior to interviewing Plaintiff.[1] Muth, in conjunction with an investigations manager, determined that Plaintiff should be reported to EWS. (Muth Dep. 117, 138, 140.) At deposition, Plaintiff's counsel questioned Muth about her decision to report Plaintiff. Counsel asked Muth whether she was unsure whether she should report Plaintiff at the time she spoke with her manager prior to making the report to EWS. Muth responded "no." (Muth Dep. 143-44.) When asked, "so in your mind you were sure that Salma had committed criminal wrongdoing," Muth responded "correct," and when asked if she believed if she had "all of the relevant facts necessary to warrant reporting Salma to EWS," Muth stated "yes, I do." (Muth Dep. 141-42, 144.) Muth also testified that she asked for her manager's opinion as to whether Plaintiff should be reported to EWS, and that her manager "confirmed to enter [Plaintiff] into EWS." (Muth Dep. 151.)

Plaintiff did not submit any evidence to dispute Muth's statements about her belief or her manager's response.[2] Plaintiff also did not submit any evidence from which a juror could infer that Muth had doubt, or was acting in reckless disregard of the truth. At best, a juror could find that Muth should have done more, perhaps by conducting a follow-up call with D.A. But that would amount to negligence, not malice. Indeed, even if Muth turned out to be wrong, and the EWS reporting conveyed false information about Plaintiff, that alone would not support a finding of

---

[1] At deposition, Muth described Plaintiff's "account impersonation," stating that Plaintiff had "admitted to doing transactions on an account that she is not a signer for. She transferred money from an account that she is not a signer on, and she benefitted from it by paying off her credit cards and loaning money to somebody else. . . . [Plaintiff] admits that she did it, but she had permission. I don't have anything in my case file, nor does the bank have anything that says that [D.A.] gave her permission. Nothing. It is only [Plaintiff] saying that [D.A.] gave her permission." (Muth Dep. 123.) Later in her deposition, when asked about the differences between D.A.'s claim and Plaintiff's explanation, Muth stated "I have had cases where employees are not one hundred percent truthful, and I am not saying that [Plaintiff] was not one hundred percent truthful; I don't know. I have an affidavit from a customer. I have a loss that the bank has sustained. I have an employee who is saying, 'Yes, I made the charges.'" (Muth Dep. 126.)

[2] Plaintiff also submitted no evidence that anyone involved in the decision to report her to EWS was motivated in any way by animus or enmity toward her. In fact, although Claudio Cipollina, Plaintiff's supervisor, was not involved with the decision to report Plaintiff to EWS, it is undisputed that he expressed his desire that Plaintiff remain employed with Defendant. (Muth Dep. 140, 153 ("I believe he asked if there was any way to save her. . . . I believe there was a conversation because she – he said she is one of his best employees.").) Therefore, the evidence actually shows the opposite–that Plaintiff's supervisor advocated for her.

malice. "[T]hat [a] statement is . . . proved to be untrue is no evidence that it was made maliciously." *Noel*, 113 Cal. App. 4th at 1371 (citation and quotation marks omitted); *see also Reader's Digest Ass'n v. Superior Court*, 37 Cal. 3d 244, 258 (1984) ("The failure to conduct a thorough and objective investigation, standing alone, does not prove actual malice, nor even necessarily raise a triable issue of fact on that controversy.").

The court denies Plaintiff's motion for leave to file a motion for reconsideration of its December 5, 2014 order on the parties' motions for summary judgment.

IT IS SO ORDERED.

Dated: February 20, 2015



DONNA M. RYU
United States Magistrate Judge

8